**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEEP ON KICKING MUSIC, INC., KEEP ON MOVING MUSIC, INC., and FREE WORLD MUSIC, LIMITED,<br><br>      Plaintiffs,<br>-against-<br><br>UNIVERSAL MUSIC GROUP, INC., UNIVERSAL MUSIC PUBLISHING GROUP, QUALITY CONTROL MUSIC, CAPITOL RECORDS, LLC, MOTOWN RECORDS, IDALY PUBLISHING, INC., KREYOL MUSIC, INC., and MELODIE MAKERS, INC.,<br><br>      Defendants. | Case No. 23-CV-4400 (JPO) (BCM) |
| UMG RECORDINGS, INC. (incorrectly sued as "Capitol Records, LLC" and "Motown Records"), UNIVERSAL MUSIC CORPORATION (incorrectly sued as "Universal Music Publishing Group"), UNIVERSAL MUSIC GROUP, INC., and QUALITY CONTROL MUSIC, LLC (incorrectly sued as "Quality Control Music"),<br><br>      Counterclaim Plaintiffs,<br>-against-<br><br>KEEP ON KICKING MUSIC, INC., KEEP ON MOVING MUSIC, INC., and FREE WORLD MUSIC, LIMITED,<br><br>      Counterclaim Defendants. | **ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' AMENDED COMPLAINT; ANSWER AND AFFIRMATIVE DEFENSES TO UNIVERSAL CROSSCLAIM PLAINTIFFS' CLAIMS; KREYOL MUSIC AND MELODIE MAKERS'S COUNTERCLAIMS, CROSS CLAIMS AND THIRD PARTY CLAIMS AGAINST ROBERT MARTINO**<br><br>**JURY TRIAL DEMANDED** |
| UMG RECORDINGS, INC. (incorrectly sued as "Capitol Records, LLC" and "Motown Records"), UNIVERSAL MUSIC CORPORATION (incorrectly sued as "Universal Music Publishing Group"), UNIVERSAL MUSIC GROUP, INC., and QUALITY CONTROL MUSIC, LLC (incorrectly sued as "Quality Control Music"),<br><br>      Crossclaim Plaintiffs,<br>-against-<br>IDALY PUBLISHING, INC. KREYOL MUSIC, INC. AND MELODIE MAKERS, INC.,<br>      Crossclaim Defendants. | |

KREYOL MUSIC, INC. and MELODIE MAKERS, INC.,
Third Party Plaintiffs and Counterclaim/Crossclaim Plaintiffs,

-against-

ROBERT MARTINO,

Third Party Defendant,

KEEP ON KICKING MUSIC, INC., KEEP ON MOVING MUSIC, INC., FREE WORLD MUSIC, LIMITED,

Counterclaim Defendants, and

UMG RECORDINGS, INC., UNIVERSAL MUSIC CORPORATION, UNIVERSAL MUSIC GROUP, INC., QUALITY CONTROL MUSIC, LLC, and IDALY PUBLISHING, INC.,

Crossclaim Defendants.

Defendants Kreyol Music, Inc. and Melodie Makers, by their undersigned counsel, allege as follows for their answer to Plaintiffs' Amended Complaint, their answer to Crossclaim Plaintiffs UMG Recordings, Inc., Universal Music Corporation, Universal Music Group, Inc. and Quality Control Music, LLC (the "Universal Music Parties")'s Crossclaims and for their related third party claims against Robert Martino, counterclaims against Plaintiffs, and crossclaims against the Universal Music Parties and Idaly Publishing:

## ANSWER TO PLAINTIFFS KEEP ON KICKING MUSIC, INC., KEEP ON MOVING, INC. AND FREE WORLD MUSIC LIMITED'S AMENDED COMPLAINT

1.      Paragraph 1 of the Plaintiffs' Amended Complaint contains allegations of law, not fact, or characterizations of the claims in this action, to which no response is required; to the extent a response is required, the allegations are denied.

2.      Kreyol Music and Melodie Makers deny the allegations in Paragraph 2 of the Amended Complaint.  Kreyol Music and Melodie Makers contend that they are the rightful owners of the publishing and sound recording rights in the musical composition *Espoir /Composition X* ("*ECX*") contained on the album *Viva les Difficiles* purchased from its original owner and Executive Producer Yvon Cine of Cine Disc in 1995 for which they obtained a copyright registration in 2018.

3.      Paragraph 3 of the Amended contains allegations of law, not fact, or characterizations of the claims in this action, to which no response is required; to the extent a response is required, the allegations are denied.

4.      Kreyol Music and Melodie Makers deny the allegations in Paragraph 4 of the Amended Complaint to the extent they purport to provide definitive definitions of music terms from an unidentified source.

5.      Kreyol Music and Melodie Makers deny the allegations in Paragraph 5 of the Amended Complaint to the extent they purport to provide definitive definitions of music terms from an unidentified source, and otherwise deny the allegations.

6.      In response to Paragraph 6 of the Amended Complaint, Kreyol Music and Melodie Makers admit that the hip hop group Migos willfully sampled the musical composition and sound recording *Espoir /Composition X* ("*ECX*") in their song *Narcos*.  Kreyol Music and

Melodie Makers are without information to answer the remaining allegations and therefore denies them.

7.       Kreyol Music and Melodie Makers are without information to answer the allegations in Paragraph 7 of the Amended Complaint and therefore denies them.

8.       In response to Paragraph 8 of the Amended Complaint, Kreyol Music and Melodie Makers deny that the Plaintiffs are the rightful owners of *ECX*.  Kreyol Music and Melodie Makers admit that they became aware of license agreements from Idaly Publishing, Inc. relating to the sampling of *ECX* in Migos's song *Narcos*.  Kreyol Music and Melodie Makers is without information to answer the remaining allegations in Paragraph 8 of the Amended Complaint at this time, and therefore denies them.

9.       Kreyol Music and Melodie Makers deny the allegations in Paragraph 9 of the Amended Complaint and respectfully refer the Court to the documents referenced therein for the contents thereof.

10.      Kreyol Music and Melodie Makers admit that the hip hop group Migos willfully sampled the musical composition and sound recording of *ECX* in their song *Narcos*, and otherwise to the extent Paragraph 10 of the Amended Complaint contains allegations of law, not fact, or characterizations of the claims in this action, to which no response is required; to the extent a response is required, the allegations are denied.

11.      Kreyol Music and Melodie Makers admit that Idaly Publishing had no rights of any kind in the musical composition and sound recording of *ECX* and that Idaly Publishing purported to grant rights to such work relating to Migos's sampling of *ECX* in the song *Narcos*. Otherwise, Paragraph 11 of the Amended Complaint contains allegations of law, not fact, or

characterizations of the claims in this action, to which no response is required; to the extent a response is required, the allegations are denied.

12.     Kreyol Music and Melodie Makers admit that they continue to assert their rights in *ECX*. Kreyol Music and Melodie Makers deny that Plaintiffs are entitled to declaratory judgment against them.

13.     Kreyol Music and Melodie Makers deny that Plaintiffs should grant declaratory judgment against them, and Kreyol Music and Melodie Makers are without information to answer the remaining allegations in Paragraph 13 of the Amended Complaint at this time, and therefore denies them.

14.     Kreyol Music and Melodie Makers deny that Plaintiffs have any rights in *ECX*, and Kreyol Music and Melodie Makers are without information to answer the remaining allegations in Paragraph 14 of the Amended Complaint at this time, and therefore denies them.

15.     Kreyol Music and Melodie Makers are without information to answer the allegations in Paragraph 15 of the Amended Complaint at this time, and therefore denies them.

16.     Kreyol Music and Melodie Makers deny the allegations of Paragraph 15 of the Amended Complaint.

17.     Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 17 of the Amended Complaint.

18.     Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 18 of the Amended Complaint.

19.     Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 19 of the Amended Complaint.

20.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 20 of the Amended Complaint.

21.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 21 of the Amended Complaint.

22.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 22 of the Amended Complaint.

23.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 23 of the Amended Complaint.

24.    Kreyol Music is a music publisher and Melodie Makers is a record label and both are owned by Jeff Wainwright; they have offices at 911 N.W 85th Ter., Plantation, Florida 33324.

25.    Paragraph 25 of the Amended Complaint contains allegations of law, not fact, or characterizations of the claims in this action, to which no response is required; to the extent a response is required, the allegations are denied.

26.    Kreyol Music and Melodie Makers deny that this Court has personal jurisdiction over them, and Kreyol Music and Melodie Makers are without information to answer the remaining allegations in Paragraph 26 of the Amended Complaint at this time, and therefore denies them.

27.    Kreyol Music and Melodie Makers deny that this Court is the proper venue for this action.

28.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 28 of the Amended Complaint.

29.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 29 of the Amended Complaint, and refer the Court to the exhibits referenced in such allegations for their content.

30.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 30 of the Amended Complaint, and refer the Court to the exhibit referenced in such allegations for its content.

31.    Kreyol Music and Melodie Makers became aware of Migos's release of the song *Narcos* containing a sampling of the musical composition and sound recording of *ECX*, and otherwise Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 31 of the Amended Complaint.

32.    Kreyol Music and Melodie Makers refer the Court to the recording of the song *Narcos* for its content, and they are without information to answer the remaining allegations in Paragraph 32 of the Amended Complaint at this time, and therefore denies them.

33.    Kreyol Music and Melodie Makers admit that the hip hop group Migos willfully sampled in their song *Narcos* the musical composition and sound recording *ECX*, the work that is the subject of this action.

34.    Kreyol Music and Melodie Makers admit that the hip hop group Migos willfully sampled in their song *Narcos* the musical composition and sound recording *ECX*, the work that is the subject of this action.  Kreyol Music and Melodie Makers otherwise state that they are without information to answer the remaining allegations in Paragraph 34 of the Amended Complaint, including the premature expert report, at this time, and therefore denies them.

35.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 35 of the Amended Complaint.

36.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 36 of the Amended Complaint, and refer the Court to the exhibit referenced in such allegations for its content.

37.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 37 of the Amended Complaint.

38.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 38 of the Amended Complaint, and refer the Court to the exhibit referenced in such allegations for its content.

39.    Kreyol Music and Melodie Makers deny the Plaintiffs have any rights in the musical composition and sound recording of *ECX*, and otherwise deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 39 of the Amended Complaint.

40.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 40 of the Amended Complaint, and refer the Court to the exhibit referenced in such allegations for its content.

41.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 41 of the Amended Complaint, and refer the Court to the exhibit referenced in such allegations for its content.

42.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 42 of the Amended Complaint, and refer the Court to the exhibit referenced in such allegations for its content.

43.    Kreyol Music and Melodie Makers contend that they are the rightful owners of the publishing and sound recording rights in the musical composition ECX and the owner of the sound recording of *ECX* contained on the album *Viva les Difficiles* which was purchased from

Yvon Cine of Cine Disc its original owner and executive producer in 1995.   Kreyol Music and Melodie Makers deny the allegations in Paragraph 43 and refer the Court to the cited exhibits for their content.

44.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 44 of the Amended Complaint, except that Kreyol Music and Melodie Makers are generally aware that Plaintiffs have wrongly contacted certain music rights organizations and maintained that they own certain rights in *ECX* contrary to Kreyol Music and Melodie Makers's rights in *ECX*.

45.    Kreyol Music and Melodie Makers admit that there is an actual controversy about the rights in *ECX*, but they deny that this Court has personal jurisdiction over them with respect to this dispute and that this forum is inconvenient given that not a single witness resides in this jurisdiction.

46.    Kreyol Music and Melodie Makers repeat and reallege their responses to the allegations in Paragraphs 1 - 45 of the Plaintiff's Amended Complaint.

47.    Kreyol Music and Melodie Makers deny the allegations in Paragraph 47 of the Complaint because, among other things, Plaintiffs have no rights in the musical composition *ECX*.

48.    Kreyol Music and Melodie Makers repeat and reallege their responses to the allegations in Paragraphs 1 - 45 of the Plaintiffs' Amended Complaint.

48.    [sic]Kreyol Music and Melodie Makers deny the allegations in Paragraph 48 of the Complaint because, among other things, Plaintiffs are not the sole and rightful owner of all right, title and interest in the musical composition *ECX*.

9

Prayer for Relief: Kreyol Music and Melodie Makers deny the allegations in Prayer for Relief of the Complaint because, among other things, Plaintiffs are not the sole and rightful owner of all right, title and interest in the musical composition *ECX*.

## AFFIRMATIVE AND OTHER DEFENSES TO PLAINTIFF'S CLAIMS

To the extent that it is Plaintiff's burden to prove any of the issues raised in the defenses set forth below, Kreyol Music and Melodie Makers hereby preserve, and do not waive their legal position that Plaintiffs have a burden of proof on those issues. Moreover, the Amended Complaint may not describe the claims or facts with sufficient particularity to permit Defendants to identify all defenses that may exist. Defendants reserve the right to amend their Answer in order to assert defenses that may become apparent in the course of discovery in this litigation. Subject to the foregoing, Kreyol Music and Melodie Makers assert the following defenses:

### FIRST DEFENSE

The Amended Complaint, and each of its purported claims for relief, fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiffs do not have any publishing or sound recording rights in whole or part to the musical composition and master sound recording of *ECX*.

### THIRD DEFENSE

Plaintiffs do not own a valid copyright and/or copyright registration in the musical composition or sound recording of *ECX*.

**FOURTH DEFENSE**

Upon information and belief, Plaintiffs have no rights and do not own a copyright registration in the sound recording of *ECX* that was used in the sampling of such work by Migos in their song *Narcos*.

**FIFTH DEFENSE**

Upon information and belief, the sound recording of *ECX* sampled by *Migos* in their song *Narcos* was authored and created by the record producer Cine Disc and is now owned by Melodie Makers.  Such sound recording of *ECX* was never owned by Robert Martino at any time, and thereby Mr. Martino had no rights in such sound recording to convey to Plaintiffs, and thus, Plaintiffs have no rights in such sound recording.  Pursuant to 37 CFR § 201.7 and Copyright Office Compendium Chapter 18 and Section 1807.4(e), this Court should direct Mr. Martino, as claimed author, and Plaintiff Free World Music, Ltd., as claimed owner, to cancel before the U.S. Copyright Office the Copyright Reg. No. SRO 412-913 filed on February 16, 2023 (after this lawsuit was commenced) in the sound recording of *ECX* cited as Exhibit 3 in the Amended Complaint because they do not have any rights in the sound recording of *ECX* referenced therein.  Therefore, Plaintiffs claims for declaratory judgment that they are the rightful owner of such sound recording copyright in *ECX* fails to state a claim and is invalid.

**SIXTH DEFENSE**

To the extent that Plaintiffs have any rights in or a valid copyright in any aspect of ECX, Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations.

**SEVENTH DEFENSE**

Plaintiff's claims and/or requested remedies against Kreyol Music and Melodie Makers, if any, are barred by the doctrine of laches as a result of their action or the waiver by Robert Martino from whom they claim to have been assigned rights in *ECX*.

**EIGHTH DEFENSE**

Plaintiffs' claims and/or requested remedies against Kreyol Music and Melodie Makers, if any, are barred by the doctrine of waiver as a result of their actions or the waiver by Robert Martino from whom they claim to have been assigned rights in *ECX*.

**NINTH DEFENSE**

Plaintiffs' claims are barred to the extent that allegations in the Amended Complaint refer generally to "Defendants" without any factual basis to distinguish each individual Defendant's alleged conduct.

**ANSWER TO THE UNIVERSAL MUSIC PARTIES'CROSSCLAIMS AGAINST KREYOL MUSIC AND MELODIE MAKERS (the "CROSSCLAIMS")**

45.    Paragraph 1 of the Crossclaims contain characterizations of the claims in this action, to which no response is required.

46.    Kreyol Music and Melodie Makers admit the first sentence of Paragraph 2 of the Crossclaims.  Kreyol Music and Melodie Makers deny the second sentence to the extent that Idaly Publishing, Inc. did not have any rights in *ECX* to convey to Universal Music Parties in the license agreements referenced in this allegation.

47.    Kreyol Music and Melodie Makers refer this Court to license agreements referenced in Paragraph 3 of the Crossclaims for the content thereof and other deny the allegations.

48.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 4 of the Crossclaims, except to the extent that they admit that Universal Music Parties instituted a legal hold on the distribution of royalties relating Migos's sampling of *ECX* in their song *Narcos*.

49.    Paragraph 5 of the Crossclaims contain characterizations of the claims and relief sought by Universal Music Parties in this action, to which no response is required.

50.    Paragraph 6 of the Crossclaims contain characterizations of the claims and relief sought by Universal Music Parties in this action, to which no response is required.

51.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 7 of the Crossclaims,

52.    Kreyol Music and Melodie Makers deny the allegations in Paragraph 8 of the Crossclaims.

53.    Kreyol Music and Melodie Makers deny the allegation in Paragraph 9 of the Crossclaims.

54.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 10 of the Crossclaims.

55.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 11 of the Crossclaims.

56.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 12 of the Crossclaims.

57.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 13 of the Crossclaims.

58.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 14 of the Crossclaims.

59.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 15 of the Crossclaims.

60.    Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph16 of the Crossclaims.

61.    Kreyol Music and Melodie Makers admit the allegations in Paragraph 17 of the Crossclaims.

62.    Kreyol Music and Melodie Makers refer this Court to the Master Use License referenced in Paragraph 18 of the Crossclaims for the content thereof and otherwise deny the allegations.

63.    Kreyol Music and Melodie Makers refer this Court to the Master Use License referenced in Paragraph 19 of the Crossclaims for the content thereof and otherwise deny the allegations.

64.    Kreyol Music and Melodie Makers refer this Court to the Master Use License referenced in Paragraph 20 of the Crossclaims for the content thereof and otherwise deny the allegations.

65.    Kreyol Music and Melodie Makers refer this Court to the Publishing Use Agreement referenced in Paragraph 21 of the Crossclaims for the content thereof and otherwise deny the allegations.

66.     Kreyol Music and Melodie Makers refer this Court to the Publishing Use Agreement referenced in Paragraph 22 of the Crossclaims for the content thereof and otherwise deny the allegations.

67.     Kreyol Music and Melodie Makers refer this Court to the Publishing Use Agreement referenced in Paragraph 23 of the Crossclaims for the content thereof and otherwise deny the allegations.

68.     Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 24 of the Crossclaims.

69.     Kreyol Music and Melodie Makers admit the allegations in Paragraph 25 of the Crossclaims.

70.     Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in first sentence of Paragraph 26 and otherwise refer the Court to Letter of Direction referenced in Paragraph 26 for the content thereof and other deny the allegations.

71.     Kreyol Music and Melodie Makers were aware of the Letter of Direction and received certain distributions from Universal Music Parties and otherwise deny the allegations in Paragraph 27.

72.     Kreyol Music and Melodie Makers admit that the Universal Crossclaim Plaintiffs instituted a legal hold on the distribution of royalties relating Migos's sampling of *ECX* in their song *Narcos* and otherwise deny the allegations in Paragraph 28 of the Crossclaims.

73.     Kreyol Music and Melodie Makers repeat and reallege their responses to the allegations in Paragraphs 1 - 29 of the Crossclaims.

74.

a.  In response to Paragraph 30(a) of the Crossclaims, upon information and belief, Idaly did not and does not have any rights in the musical composition *ECX* or the sound recording of such work that was sampled in Migos's song *Narcos* and did not have the right to enter into the Master Use Agreement and Publishing Use Agreement with the Universal Music Parties, and Kreyol Music and Melodie Makers otherwise deny the allegations in Paragraph 30(a) of the Crossclaims.

b.  In response to Paragraph 30(b) of the Crossclaims, Kreyol Music and Melodie Makers are the sole owner of the sound recording of *ECX* sampled in Migos's song *Narcos*, and to the extent they previously accepted certain distributions from the Universal Music Parties, such actions were appropriate and in connection with those payments the Universal Music Parties correctly assumed that they had an implied license to the exploitation of Kreyol Music and Melodie Makers' rights in the musical composition and sound recording of *ECX* belonging the them; Kreyol Music and Melodie Makers otherwise deny the allegations in Paragraph 30(b) of the Crossclaims.

c.  In response to Paragraph 30(b) of the Crossclaims, Kreyol Music and Melodie Makers are the sole owner of the sound recording of *ECX* sampled in Migos's song *Narcos* and are entitled to royalties, and admit that Idaly is no longer entitled to any royalties because, upon information and belief, Idaly did not and does not have any rights in the musical composition *ECX* or the sound recording of such work that was sampled in Migos's song *Narcos* and did not have the right to enter into the Master Use Agreement and Publishing Use

Agreement with the Universal Music Parties; Kreyol Music and Melodie

Makers otherwise deny the allegations in Paragraph 30(c) of the Crossclaims.

75.    Kreyol Music and Melodie Makers repeat and reallege their responses to the previous allegations of the Crossclaims as if fully set forth herein.

76.    Because this claim and allegations are alleged only against Idaly, therefore Kreyol Music and Melodie Maker are not required to respond.

77.    Because this claim and allegations are alleged only against Idaly, therefore Kreyol Music and Melodie Maker are not required to respond.

78.    Because this claim and allegations are alleged only against Idaly, therefore Kreyol Music and Melodie Maker are not required to respond.

79.    Kreyol Music and Melodie Makers repeat and reallege their responses to the previous allegations of the Crossclaims as if fully set forth herein.

80.    Because this claim and allegations is alleged only against Idaly, therefore Kreyol Music and Melodie Maker are not required to respond.

81.    Because this claim and allegations is alleged only against Idaly, therefore Kreyol Music and Melodie Maker are not required to respond.

82.    Kreyol Music and Melodie Makers repeat and reallege their responses to the previous allegations of the Crossclaims as if fully set forth herein.

83.    Kreyol Music and Melodie Makers received and accepted distribution of royalty payments pursuant to a Letter of Direction to the Universal Music Parties, and they otherwise deny the remaining allegations in Paragraph 39.

84.    At the time that Migos sampled the musical composition and sound recording of *ECX* in their song *Narcos*, Kreyol Music and Melodie Makers owned publishing rights and was

the sole owner of the sound recording of *ECX* from which the sampling in *Narcos* was created and they continue to own those same rights today; Kreyol Music and Melodie Makers were, are and continue to be entitled to royalties on the sampling use of *ECX* in Migos's song *Narcos*; and they are deny the remaining allegations in Paragraph 40.

85.    Kreyol Music and Melodie Makers deny the allegations in Paragraph 41.

86.    Kreyol Music and Melodie Makers deny the allegations in Paragraph 42.

## AFFIRMATIVE AND OTHER DEFENSES TO UNIVERSAL MUSIC PARTIES' CROSSCLAIMS

To the extent that it is the Universal Music Parties' burden to prove any of the issues raised in the defenses set forth below, Kreyol Music and Melodie Makers hereby preserve, and do not waive their legal position that the Universal Music Parties have a burden of proof on those issues. Moreover, the Universal Music Parties Crossclaims may not describe the claims or facts with sufficient particularity to permit Kreyol Music and Melodie Makers to identify all defenses that may exist. Kreyol Music and Melodie Makers reserve the right to amend their Answer in order to assert defenses that may become apparent in the course of discovery in this litigation.

## DEFENSE TO ALL OF THE UNIVERSAL MUSIC PARTIES' CROSSCLAIMS

Kreyol Music and Melodie Makers own the publishing rights in the musical composition in *ECX* and own the master recording of the album *Viva Les Difficiles* containing the musical composition *ECX*, and its accompanying sound recording rights, from which Migos sampled *ECX* in their song *Narcos*. In 2018, Kreyol Music, via its owner Jeff Wainwright, filed and recorded its sole and exclusive rights in the master recording and album *Viva Les Difficiles* under the Copyright Law of Haiti to protect all of the copyrights in such recording and album. Accordingly, Kreyol Music and Melodie Makers have at all times been entitled to receive royalties from Migos and the Universal Music Parties in connection with their publishing and

sound recording rights in *ECX* and they continue to be entitled to receive such royalties as a result of Migos and the Universal Music Parties' exploitation of Kreyol Music and Melodie Makers' rights by the sampling of *ECX* in Migos's song *Narcos*.

## NATURE OF KREYOL MUSIC AND MELODIE MAKERS'S COUNTERCLAIMS, CROSSCLAIMS AND THIRD-PARTY CLAIMS

1.      The central disputes in this litigation are over the ownership of rights in the musical composition and sound recording of *ECX* as well as the sampling of such work in the band Migos's song *Narcos*.

2.      Kreyol Music and Melodie Makers own the publishing rights in the musical composition in *ECX* and own the master recording of the album *Viva Les Difficiles* containing the musical composition *ECX*, and its accompanying sound recording rights, from which Migos sampled *ECX* in their song *Narcos*.

3.      In 2018, Kreyol Music, via its owner Jeff Wainwright, filed and recorded its sole and exclusive rights in the master recording *Viva Les Difficiles* under the Copyright Law of Haiti. Attached as Exhibit A hereto is a copy of such official filing and an English translation thereof

4.      Kreyol Music and Melodie Makers own the publishing rights in the musical composition in *ECX* and own the master recording of the album *Viva Les Difficiles* containing the musical composition *ECX*, and its accompanying sound recording rights, from which Migos sampled *ECX* in their song *Narcos*.

5.      In 2018, Kreyol Music, via its owner Jeff Wainwright, filed and recorded its sole and exclusive rights in the master recording *Viva Les Difficiles* under the Copyright Law of Haiti. Attached as Exhibit A hereto is a copy of such official filing and an English translation thereof.

6.    Defendant Idaly has no publishing or sound recording rights in *ECX*.  In entering the Joint Ownership and Administration Agreement with Idaly with respect to the administration of the rights in *ECX* relating to Migos's sampling of *ECX* in their song *Narcos*, Kreyol Music and Melodie Makers agreed solely to resolve any potential disputes regarding the ownership of rights in the work as of that time and Kreyol Music and Melodie Makers did not object to Idaly receiving royalties at that time.  Given that Idaly has since abdicated its rights in ECX, Kreyol Music and Melodie Makers request that this Court determine that the Master Use and Publishing Use Agreements between Idaly and the Universal Music Parties are void, and that Kreyol Music and Melodie Makers are the sole owners of the publishing and sound recording rights in *ECX*.

7.    Third-party Defendant Robert Martino was on notice of Kreyol Music's Publishing and Melodie Makers's publishing and sound recording rights in *ECX* for years due to his business and contractual relationships with Kreyol Music.  At no time prior to the actions which Martino and Plaintiffs took leading to and in connection with this lawsuit did Martino or Plaintiffs notify Kreyol Music and Melodie Makers that they were not the rightful owners of the publishing and sound recording rights in *ECX*.

8.    In addition to the fact that Kreyol Music and Melodie Makers are the owners of publishing and sound recording rights in *ECX*, if Martino had any publishing and sound recording rights in *ECX*, he waived those rights by not asserting them for decades, and he is estopped from challenging the current publishing and sound recording rights of Kreyol Music and Melodie Makers in *ECX*.  At the time Martino purported to transfer certain publishing and recording rights in *ECX* to the Plaintiffs, he did not have those rights to convey, and as a result Plaintiffs do not have certain publishing and sound recording rights in *ECX* that they asserted in this action and Plaintiffs have no standing to bring any of the claims in this action.

9.      Upon information and belief, in 2022, Robert Martino in concert with the Plaintiffs issued a remastering of the sound recording of the album *Viva Les Difficiles* containing *ECX* under the same album title *Viva Les Difficiles* ("Remastered and Martino Infringing Album").   and the album cover for such Remastered and Infringing Martino Album also substantially copied the identical title of album and extremely distinctive font of the album's name as well as photographs featured on Viva Les Difficiles to make it look confusingly similar to the original *Viva Les Difficiles* album owned by Kreyol Music and Melodie Makers, which elements were protected under the Haiti copyright registration for *Viva Les Difficiles*.  Upon information and belief, the sound recording of *ECX* on such Remastered and Infringing Album is an unauthorized copy of *ECX* from *Viva Les Difficiles* for which the publishing and sound recording rights are owned by Kreyol Music and Melodie Makers.  Upon information and belief, Martino and Plaintiffs collaborated together to produce and sell the Remastered and Infringing Martino Album.  Martino and Plaintiffs' conduct with respect to the issuance of such Remastered and Infringing Martino Album constitutes copyright infringement of Kreyol Music and Melodie Makers's publishing and sound recording rights in *Viva les Difficiles* and *ECX*.

## JURISDICTION AND VENUE

10.     Kreyol Music and Melodie Makers continue to maintain that this Court does not have personal jurisdiction over them and that this Court is not the proper venue for these claims because there are no witnesses to the central issue of ownership of rights in the music composition *ECX* in this jurisdiction, contrary to the Court's decision otherwise, and Kreyol Music and Melodie Makers reserve their rights with respect thereto and specifically reserves the right to ask this Court to transfer this action to Florida.  Kreyol Music and Melodie Makers assert

these claims as a defense to Plaintiffs' and the Universal Music Parties' Crossclaims against them.

11.     The Plaintiffs have admitted that this Court has subject matter jurisdiction over the claims against Kreyol Music and Melodie Makers, and thus this Court also has subject matter jurisdiction over the related claims asserted by Kreyol Music and Melodie Makers.

12.     Robert Martino is a necessary party to all of the other parties' request for this Court to determine the ownership of publishing and sound recording rights in the musical composition *ECX* as a result of the fact that Martino as claimed author or composer of the work purported to convey sound recording rights in the works *Viva Les Difficiles* and *ECX* to the Plaintiffs (which rights Kreyol Music and Melodie Makers contend Martino did not have) and the Plaintiffs have sought determination of the ownership of rights, including publishing and sound recording rights, in the work *ECX* as the basis of their copyright infringement sampling claim against the Universal Music Parties. In authorizing Plaintiffs to act as his agent for his rights in *ECX*, Martino has consented to personal jurisdiction before this Court.  In addition, Martino and Plaintiffs acted in concert to release and sell throughout the United States, including New York, through various music sale platforms the Remastered and Infringing Martino Album which wholesale copies, upon information and belief, the entirety of the original, master sound recording *Viva Les Difficiles,* including the work *ECX,* owned solely and exclusively by Kreyol Music and Melodie Makers, a copyright registration for which was obtained in 2018 in Haiti.

**PARTIES**

13.     Kreyol Music and Melodie Makers are Florida companies with their principal place of business in Florida.

22

14.    UMG Recordings, Inc., is a Delaware corporation with corporate headquarters in California.

15.     Universal Music Corporation is a Delaware corporation with corporate headquarters in California.

16.    Universal Music Group, Inc., is a Delaware corporation with corporate headquarters in California.

17.    Quality Control is a Georgia limited liability company with offices in Georgia.

18.    Keep on Kicking Music, Inc. and Keep on Moving Music, Inc. are Delaware corporations, which allege they are based in Florida.

19.    Upon information and belief, Free World Music, Limited is a British corporation with offices in Florida.

20.    Upon information and belief, Idaly is a Florida corporation with an office in New Jersey.

21.    Third party Defendant Robert Martino is a resident of Florida who purports to have assigned rights in the musical composition and sound recording *ECX* to Keep on Kicking Music, Keep on Moving Music and Free World Music.


**FACTS COMMON TO KREYOL MUSIC AND MELODIE MAKER'S**
**COUNTERCLAIMS, CROSSCLAIMS AND THIRD-PARTY CLAIMS**

***Defendants Kreyol Music and Melodie Makers are Florida Corporations that Operate in the State of Florida***

22. In 1999, Kreyol Music, Inc. was incorporated in the State of Florida.  Its principal place of business is in Florida.  It is a recording label that specializes in the production, publishing, promotion and distribution of artists and music originated mostly from Haiti and the

23

French Antilles. Since its creation, Kreyol Music has recorded, produced and released numerous albums of different groups and artists.

23.     In 1988, Melodie Makers, Inc. was formed in the State of Florida by Three equal partners, one of them being Jeff Wainwright.  Its principal place of business is in Florida.  It signed and produced artists and groups, and manufactured and distributed their compact discs.  By the summer of 1995, the three partners had a disagreement, and the company became inactive. In 2010, Jeff Wainwright took control of Melodie Makers which continues to be a corporation formed under Florida law.

24.     Melodie Makers is the record label and Kreyol Music is the music publisher for the *Viva Les Difficiles* album containing the composition *ECX* that is the subject of this action.

***Creation of Composition of* Espoir/Composition X *(ECX)***

25.     In the mid-1960s in Haiti, a neighborhood band *Les Difficiles de Petion Ville* created and played Haitian-influenced music.  Henry Celestin was the principal owner and leader of the band.  Mr. Celestin is a Haitian citizen and continues to reside in Haiti.

26.     One of the guitarists for the band was Robert Martino who then resided in Haiti. Mr. Martino claims to have been an author of the musical composition *ECX*.

27.     Upon information and belief, Mr. Martino created the musical composition as a work for hire for the band *Les Difficiles de Petion Ville.*  Mr. Martino had a falling out with the band, and in 1970 he left the band and went on to play with a series of other bands.  Another guitarist replaced Mr. Martino in the band *Les Difficiles de Petion Ville.*

28.     The music of the band *Les Difficiles de Petion Ville* was primarily recorded in the 1960s on 8 track tapes in Haiti as was other Haitian music during that time period, and, upon

information and belief, Mr. Celestin owned all of the composition, publishing and then existing

sound recording rights of the band *Les Difficiles de Petion Ville* and its members.

29.     As it is customary in the Haitian music industry, all of the publishing and sound

recording rights were usually sold by the band to the record label who purchased them for a lump

sum, and, by doing so, the record label acquired all of the publishing and sound recording rights

and the master recordings.

30.     At some point in time in 1976, Mr. Celestin retired, and the band *Les Difficiles de

Petion Ville* ceased performing, and Mr. Celestin prohibited anyone from using the band's name.

***Cine Disc Acquires Rights to* ECX *and Creates New Sound Recording***

31.     Yvon Cine was the owner of Cine Disc a record label based in Haiti that was very

active in the late seventies and for most of the eighties.  Mr. Cine noticed that there was still a fan

base for the music of *Les Difficiles de Petion Ville.*

32.     Mr. Cine came up with the idea of gathering most of the original musicians of the

group *Les Difficiles de Petion Ville* to do a remake of some of their greatest hits.  The album

created by Cine Disc was called *Viva Les Difficiles,* and the new recording benefited from

advances from a 24-track recording studio in Port Au Prince, Haiti called Audiotek.  Henry

Celestin came out of retirement to perform the seven songs on the album.  The composition *ECX*

was included on *Viva Les Difficiles*.  At the time of the studio recording of *Viva Les Difficiles*,

Mr. Martino was the part owner and band leader of the group *Scorpio*.  Mr. Martino's

participation in *Viva Les Difficiles* was as a work for hire for Mr. Celestin who, upon information

and belief, owned the band *Les Difficiles de Petion Ville* and all the composition, publishing and

sound recording rights of the band and its members.

33.     The album *Viva Les Difficiles* was produced, recorded, and first released in Haiti by Cine Disc.

34.     Upon information and belief, Mr. Martino has no publishing or sound recording rights in the master recording of *Viva Les Difficiles.*

35.     Mr. Cine is now deceased. He passed away in February 2020.

36.     Based on Kreyol Music's dealings with Mr. Cine, Mr. Martino never challenged Cine Disc's ownership of the composition, publishing and sound recording rights of *ECX* during the time that Cine Disc published the *Viva Les Difficiles* album in Haiti and/or Mr. Martino never claimed that he owned any rights in *ECX*.

***Melodie Makers Affiliate Acquired All Rights in Viva Les Difficile Compositions and Sound Recording***

37.     Mr. Cine stopped producing music and went on to other business endeavors. In 1994, Mr. Cine approached Melodie Makers about licensing all of his rights in the master recording of *Viva les Difficiles* and other works. Commencing in 1994, Melodie Makers in Florida published *Viva les Difficiles* under a license from Cine Disc.

38.     Antilles Mizik, Inc. is a company formed in the State of Florida. Needing content for Antilles Mizik, Jeff Wainwright offered Mr. Cine to buy outright some of his master recordings including the publishing and sound recording rights. On December 8, 1995, Mr. Wainwright and Mr. Cine negotiated and finalized the purchase of, among others, *Viva Les Difficiles*. These negotiations took place in Miami, Florida.

39.     Below is a copy of the CD album cover for *Viva Les Difficiles*:



40. The back of CD cover indicates Melodie Makers' rights:



41. During the time period that Melodie Makers published *Viva les Difficiles*, including the composition *ECX* under license from Cine Disc, Mr. Martino never challenged Melodie Makers's publishing and sound recording rights of *ECX* and/or Mr. Martino never claimed that he owned any rights in *ECX*.

**Since 2000, Kreyol Music and Mr. Martino Have Had Extensive Business Dealings**

42. Since 2000, Mr. Martino has worked on several studio projects with the Kreyol Music record label as a hired musician mostly recording guitar tracks. From the end of 2007 until 2012, Mr. Martino also was hired as the maestro and lead guitar of the musical group of one of Kreyol Music's recording artist Misty Jean. He played in numerous events for the band and was paid by check.

43. In addition, in 2007, Kreyol Music entered a written agreement with Mr. Martino and purchased his second solo album entitled *Oye Chica* and other matters (the "2007 Kreyol Music/Martino Agreement"). Kreyol Music purchased all the rights for this album from Mr. Martino for a lump sum cash payment, including the publishing and sound recording rights.

44. Such 2007 Kreyol Music/Martino Agreement was entered between Kreyol Music and Mr. Martino in 2007 regarding (i) the album *Oye Chica*, (ii) an option for another album, as well as (iii) Mr. Martino's obligation "[to] bring to the Label's attention each and every inquiry, proposal or offer it receives relating to Artist's involvement in the music and recording industry." See 2007 Kreyol Music/Martino Agreement, Paragraphs 1.e, 2.e. and 7.b. For the monetary consideration provided by Kreyol Music, Mr. Martino gave Kreyol Music a right of first refusal with respect to any of his involvement in the music and recording industry. Under the 2007 Kreyol Music/Martino Agreement, Mr. Martino was obligated to bring "each and every inquiry, proposal or offer it receives relating to the Artist's involvement in the music and recording industry." Under such agreement, Mr. Martino was required to bring to Kreyol Music all music and recording matters relating to *ECX*. Mr. Martino has claimed, in a declaration submitted in this action, that he assigned to Free World Music "all right, title, and interest in and to the Master Recording of ECX." Besides the fact that he could not do so because the master sound recording of *ECX* is owned by Kreyol Music and Melodie Makers and Mr. Martino had no rights in the sound recording, Mr. Martino was obligated under the 2007 Kreyol Music/Martino Agreement to bring any matters regarding his involvement in the music industry to Kreyol Music.

45. Over time, Kreyol Music has paid Mr. Martino royalties for certain distribution works, and he was paid twice annually for such works by direct deposit into his bank located in the State of Florida, and he has been sent by email statements relating to such payments.

46. Mr. Martino was often in Kreyol Music's offices in Florida where it openly displayed all of its albums including *Viva les Difficiles* containing the work *ECX,* and again he never challenged Kreyol Music and Melodie Maker's publishing and sound recording rights to *ECX* and/or Mr. Martino never claimed that he owned any rights in *ECX*.

### *In Haiti, Melodie Makers Sought to Establish all of its Rights in the Master Recording for Viva les Difficiles*

47. In 2018, in Haiti, Melodie Makers sought to protect all of its rights to the master recording *Viva les Difficiles* under Article 10 of the Haiti Decree of 1968 on the rights of authors, literary works, scientifics and artistics.  Jeff Wainwright appeared before a notary in Haiti who notarized and ratified Melodie Makers's publishing and sound recording rights in *Viva Les Difficiles*.

### *Mr. Martino Sought to Claim Rights in ECX in France and the United States*

48. In 2018, the group *Migos* released the composition *Narcos* on the third track of their Culture III album in 2018.  The composition *Narcos* contained a sampling of *ECX*.

49. In 2000, more than three decades after the creation of *ECX*, Mr. Martino, having never asserted any rights to the composition *ECX* at any time previously, sought to register *ECX* in France at Societe des Auteurs, Compositeurs et Editeurs de Musique ("SACEM").  In his application with SACEM, Mr. Martino claimed to be author and composer.  In the application, Mr. Martino references the master sound recording owned by Melodie Makers specifically identifying the catalog number MMICD1037, which is the catalog number assigned by Melodie Makers, Inc. in 1994 (i.e., "MMI" being the reference to Melodie Makers, Inc.).

50. In the SACEM application, Mr. Martino did <u>not</u> identify himself as the owner of the publishing rights in his registration in the "Editeur" fields. The "Editeur" fields were left blank. Obviously, Mr. Martino was not claiming any publishing or sound recording rights.

51. Upon information and belief, and as alleged in the Plaintiffs' Amended Complaint ¶ 20, Mr. Martino appears to have attempted to assign rights that he did not have to the Plaintiffs in this action Keep on Kicking Music, Inc., Keep on Moving Music, Inc. and Free World Music Limited.

52.    In 2021, Plaintiff Keep on Kicking Music, Inc. received a U.S. Copyright registration in PA0002321270 / 2021-11-10 for *ECX* based on its representation that the date of publication was July 1, 1978 (appearing to refer to the *Viva Les Difficiles* album containing *ECX* which master recording is owned by Melodie Makers). The registration was only for <u>authorship</u> of *ECX*. Amended Complaint, Ex. 2. The registration information identified France as the nation of first publication, but upon information and belief, this was incorrect as Haiti was the place of first publication.

53.    Shortly before this lawsuit was commenced, in January 2023, Plaintiffs filed a second copyright registration for the <u>sound recording</u> of *ECX*. Amended Complaint, Ex. 3. Prior to this time, Mr. Martino had not claimed any rights in the sound recording of *ECX* which had been published for many years by first Cine Disc and later by Kreyol Music and Melodie Makers which acquired from Cine Disc both the publishing and sound recording rights in the master recording of *Viva Les Difficiles* which contained the work *ECX*.

54.    Upon information and belief, in 2022, Robert Martino in concert with the Plaintiffs issued a remastering of the sound recording of the album *Viva Les Difficiles* containing *ECX* under the same album title *Viva Les Difficiles* (the "Remastered and Infringing Martino

Album").  Upon information and belief, the Remastered and Infringing Martino Album has been sold since 2022, and it is currently for sale on Spotify, Apple Music and Amazon and other music platforms in violation of Kreyol Music and Melodie Makers's rights.

55.    The album cover for such Remastered and Infringing Martino Album also substantially copied the identical title of album, the extremely distinctive font of the album's name as well as the photographs featured on *Viva Les Difficiles* to make the remastered album look confusingly similar to the original *Viva Les Difficiles* album owned by Kreyol Music and Melodie Makers which copyrighted elements were protected under the copyright registration obtained in Haiti for the album.

56.    Upon information and belief, the sound recording of *ECX* on such Remastered and Infringing Martino Album is an unauthorized copy of *ECX* from *Viva Les Difficiles* for which the publishing and sound recording rights are owned by Kreyol Music and Melodie Makers. Upon information and belief, Martino and Plaintiffs collaborated together to produce and sell the Remastered and Infringing Album.

57.    Martino and Plaintiffs' conduct with respect to the release, sale and exploitation of the Remastered and Infringing Martino Album constitutes copyright infringement of Kreyol Music and Melodie Makers's publishing and sound recording rights in *Viva les Difficiles* and *ECX*.  Martino's conduct with respect to the production and release of the Remastered and Infringing Martino Album also breached the 2007 Kreyol Music/Martino Agreement.

32



58.    Mr. Martino and/or Plaintiffs released the album *The Legend Is Back*.  Such

release and sales of such album also breached Kreyol Music's rights of first refusal clause under

the 2007 Kreyol Music/Martino Agreement.  In addition,

59.    Idaly has now rescinded its claims, and abdicated any claims, to the publishing

and sound recording rights in *ECX*.  Plaintiffs' Am. Complaint ¶ 40 & Ex. 10 thereto.


### COUNT I

### <u>DECLARATORY JUDGMENT AGAINST MARTINO, PLAINTIFFS,<br>UNIVERSAL MUSIC PARTIES AND IDALY</u>

60.    The preceding paragraphs of Kreyol Music and Melodie Makers's claims are

realleged and incorporated herein by reference as if fully set forth herein.

61.     As a result of the allegations stated in Plaintiffs' Amended Answer, the Universal Music Parties' Crossclaims, and the allegations described in the foregoing paragraphs of Kreyol Music and Melodie Maker's claims, an actual controversy exists, and declaratory judgment is necessary and appropriate on the issues set forth in this Count.

62.

Kreyol Music and Melodie Makers seek declaratory judgment as follows:

   a. Kreyol Music and Melodie Makers are the sole owners of the publishing rights and sound recording rights in and to *ECX* as well as the Haiti copyright registration for the sound recording of such work.

   b. *Migos* illegally used and sampled *ECX* in their song *Narcos* and infringed Kreyol Music and Melodie Makers's publishing and sound recording rights in *ECX.*

   c. The sampling of *ECX* by Migos in their song *Narcos* constitutes an infringement of Kreyol Music's publishing rights in the musical composition *ECX*, and the Universal Music Parties are required to pay Kreyol Music and Melodie Makers royalties for such unauthorized use as a result of Kreyol Music's publishing and Melodie Makers sound recording rights.

   d. The sampling of *ECX* by Migos in their song *Narcos* constitutes an infringement of Melodie Makers's sound recording rights in the musical composition *ECX* on the master recording of *Viva Les Difficiles* owned by Kreyol Music and Melodie Makers, and the Universal Music Parties are required to pay Kreyol Music and Melodie Makers royalties for such unauthorized use.

   e. Idaly has no publishing or sound recording rights in *ECX*, and to the extent it had any such rights at any time, it has now abdicated those rights.

f.  To the extent that Idaly had no rights publishing or sound recording rights in *ECX* and has now abdicated such rights, the Master Use Agreement and Publishing Use Agreement (referenced in the Plaintiffs' Amended Complaint) shall be determined to be null and void, and Idaly is no longer entitled to distributions thereunder with respect to Migos sampling of *ECX* in their work *Narcos*.

g.  Martino has no publishing rights in the musical composition *ECX* used by Migos in their sampling of *ECX* in their song *Narcos*.

h.  Martino has no sound recording rights in the master recording of *ECX* used by Migos in their sampling of *ECX* in their song *Narcos*.

i.  Plaintiffs have no publishing rights in the musical composition of *ECX*.

j.  Plaintiffs have no sound recording rights in the master recording of *ECX* used by Migos in their sampling of *ECX* in their song *Narcos*.

k.  Kreyol Music and Melodie Makers are the sole owners of the publishing and sound recording rights in the album of *Viva Les Difficiles* as well as the Haiti copyright registration for such sound recording and the album cover.

l.  Martino and Plaintiffs' unauthorized use of the master sound recording of *Viva Les Difficiles* in the Remastered and Infringing Martino Album constitutes (a) copyright infringement of Kreyol Music and Melodie Makers's publishing and sound recording rights and the infringement of the copyright protected album cover, and (b) breach of the 2007 Kreyol Music/Martino Agreement.

m.  Martino's release, sale and exploitation of the album *The Legend is Back* constitutes a breach of the 2007 Kreyol Music/Martino Agreement because (a) Martino agreed that Kreyol Music was its sole representative in the music

industry and provided Kreyol Music a right of first refusal for matters relating to
the music and recording industry, and (b) Kreyol Music purchased publishing and
sound recording rights for the works *Oye Chica* and *Ti DWET* which songs were
included on such album without authorization and without compensation to
Kreyol Music.

## COUNT II

### COPYRIGHT INFRINGEMENT AGAINST THE UNIVERSAL MUSIC PARTIES FOR THE UNAUTHORIZED SAMPLING OF *ECX* IN MIGOS'S SONG *NARCOS*

63.    The preceding paragraphs of Kreyol Music and Melodie Makers's claims are
realleged and incorporated herein by reference as if fully set forth herein.

64.    Melodie Makers is the record label and Kreyol Music is the music publisher for
the *Viva Les Difficiles* album containing the composition *ECX* that is the subject of this action.

65.    Kreyol Music and Melodie Makers are the rightful owners of the publishing and
sound recording rights in the musical composition *ECX* and the owner of the sound recording of
*ECX* contained on the album *Viva les Difficiles* purchased from its original owner and Executive
Producer Yvon Cine of Cine Disc in 1995.

66.    In 2018, Kreyol Music, via its owner Jeff Wainwright, filed, recorded and
registered its sole and exclusive rights in the master recording for the album *Viva Les Difficiles,*
including *ECX,* under the Copyright Laws of Haiti.  See Exhibit A hereto.

67.    In their song *Narcos*, the band Migos willfully sampled Kreyol Music's master
recording of *ECX*, which is solely and exclusively owned by Kreyol Music and the copyright for
which is protected under the laws of Haiti.

68.    Haiti is a treaty party under the Berne Convention, and Kreyol Music and Melodie Makers are entitled to enforce their rights in this Court under their Haiti copyright registration.

69.    Migos and the Universal Music Parties Defendants' unauthorized reproduction, distribution, public performance, display, and creation of *Narcos* infringes on Kreyol Music and Melodie Makers's exclusive rights in *ECX* in violation of the Haiti Copyright Laws, and/or the U.S Copyright Act, 17 U.S.C. §§ 101, et seq.

70.    The infringing work *Narcos* copies quantitatively and qualitatively the most distinct, important, recognizable, and significant portions of *ECX* and certainly, the song *Narcos* could not exist without the infringing portions of *ECX*.

71.    From the date of the creation of the infringing work *Narcos*, Migos and the Universal Music Parties have infringed on Kreyol Music and Melodie Maker's copyright interest in the sound recording of *ECX*.

72.    For a period of time, the Universal Music Parties recognized Kreyol Music and Melodie Makers' publishing and sound recording rights in *ECX* and paid Kreyol Music and Melodie Makers a portion of royalties with respect to their rights, however, the Universal Music Parties ceased such payments of royalties.

73.    Despite ceasing such payments, the Migos and Universal Music Parties infringement continues as the song *Narcos* continues to be sold and/or to the extent the Infringing Work *Narcos* continues to be licensed for sale, downloads, streams, and/or other exploitations by Migos, the Universal Music Parties, and/or their agents.

74.    By this claim, Kreyol Music seeks full payment for its sole and exclusive publishing and sound recording rights in the master sound recording of *ECX* since the date that the Universal Music Parties ceased paying royalties as well as any other monies owing to them.

75.    At all relevant times since payment of royalties to Kreyol Music and Melodie Makers has ceased, Defendants' conduct has been and continues to be knowing, willful, and with complete disregard of their rights.

76.    As a direct and proximate result of Migos and the Universal Music Parties' willful conduct, Kreyol Music and Melodie Makers have suffered actual damages, including lost profits, lost opportunities, and loss of goodwill.

77.    Pursuant to Haitian Copyright Law and/or 17 U.S.C. § 504(b), Kreyol Music and Melodie Makers are entitled to actual damages, including disgorgement of Migos and the Universal Music Parties' profits attributable to the infringement, as will be proven at trial. In the alternative, pursuant to 17 U.S.C. § 504(c), Kreyol Music and Melodie Makers is entitled to the maximum statutory damages of $150,000 per willful infringement. Pursuant to 17 U.S.C. § 505, Kreyol Music and Melodie Makers are also entitled to their costs, including reasonable attorneys' fees and costs.

78. Migos and the Universal Music Parties' conduct is causing and, unless enjoined by this Court, will continue to cause Kreyol Music and Melodie Makers irreparable injury that cannot be fully compensated or measured in monetary terms. They have no adequate remedy at law, and pursuant to Haitian Copyright Law and/or 17 U.S.C. § 502, Kreyol Music and Melodie Makers are entitled to a preliminary and permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the infringing work *Narcos*.

**COUNT III**

**DECLARATORY JUDGMENT AGAINST MARTINO AND PLAINTIFF
TO CANCEL THEIR INVALID U.S. COPYRIGHT REGISTRATION
IN THE SOUND RECORDING OF *ECX***

79. The preceding paragraphs of Kreyol Music and Melodie Makers's claims are realleged and incorporated herein by reference as if fully set forth herein.

80. Melodie Makers is the record label and Kreyol Music is the music publisher for the *Viva Les Difficiles* album containing the composition *ECX* that is the subject of this action.

81. Kreyol Music and Melodie Makers are the rightful owners of the publishing and sound recording rights in the musical composition ECX and the owner of the sound recording of *ECX* contained on the album *Viva les Difficiles* purchased from its original owner and Executive Producer Yvon Cine of Cine Disc in 1995.

82. Kreyol Music and Melodie Makers seek a declaration that Martino and Plaintiffs do not own the sound recording rights to *ECX* and an order, pursuant to 37 CFR § 201.7 and Copyright Office Compendium Chapter 18 and Section 1807.4(e), that this Court direct Mr. Martino, as claimed author, and Plaintiff Free World Music, Ltd., as claimed owner, to cancel before the U.S. Copyright Office the Copyright Reg. No. SRO 412-913 filed on February 16, 2023 (after this lawsuit was commenced).

**COUNT IV**

**COPYRIGHT INFRINGEMENT AGAINST MARTINO AND
PLAINTIFFS FOR UNAUTHORIZED USE OF THE MASTER SOUND RECORDING
OF *VIVA LES DIFFICILES* (CONTAINING *ECX* AND OTHER WORKS)**

83. The preceding paragraphs of Kreyol Music and Melodie Makers's claims are realleged and incorporated herein by reference as if fully set forth herein.

84.    Melodie Makers is the record label and Kreyol Music is the music publisher for the *Viva Les Difficiles* album containing the composition *ECX* that is the subject of this action.

85.    Kreyol Music and Melodie Makers are the rightful owners of the publishing and sound recording rights in album *Viva les Difficiles* purchased from its original owner and Executive Producer Yvon Cine of Cine Disc in 1995.

86.    In 2018, Kreyol Music, via its owner Jeff Wainwright, filed, recorded and registered its sole and exclusive rights in the master recording for the album *Viva Les Difficiles,* including *ECX,* under the Copyright Laws of Haiti.  See Exhibit A hereto.

87.    Haiti is a treaty party under the Berne Convention, and Kreyol Music and Melodie Makers are entitled to enforce their rights in this Court under their Haiti copyright registration.

88.    Upon information and belief, in 2022, Robert Martino in concert with the Plaintiffs released and sold a remastering of the sound recording of the album *Viva Les Difficiles* containing *ECX* under the same album title *Viva Les Difficiles* herein referenced as the Remastered and Infringing Martino Album.  The Remastered and Infringing Martino Album is currently being sold on Spotify, Apple Music and Amazon as well as other music platforms in flagrant violation of Kreyol Music and Melodie Makers's rights.

89.    The album cover for such Remastered and Infringing Martino Album also substantially copied the identical title of album, the extremely distinctive font of the album's name as well as the photographs featured on *Viva Les Difficiles* to make the remastered album look confusingly similar to the original *Viva Les Difficiles* album owned by Kreyol Music and Melodie Makers which copyrighted elements were protected under the copyright registration obtained in Haiti for the album.

90.     Upon information and belief, such Remastered and Infringing Martino Album is an unauthorized copy of the complete sound recording of *Viva Les Difficiles* for which the publishing and sound recording rights are owned solely and exclusively by Kreyol Music and Melodie Makers.  Upon information and belief, Martino and Plaintiffs collaborated together to produce and sell the Remastered and Infringing Martino Album.

91.     Martino and Plaintiffs unauthorized reproduction, distribution, public performance, display, and creation of the Remastered and Infringing Martino Album infringes on Kreyol Music and Melodie Makers's exclusive rights in *Viva Les Difficiles* in violation of the Haitian Copyright Laws, and/or the U.S Copyright Act, 17 U.S.C. §§ 101, et seq.

92.  Upon information and belief, the infringing work of Remastered and Infringing Martino Album copies in its entirety *Viva Les Difficiles*, and Remastered and Infringing Martino Album could not exist without original master sound recording of *Viva Les Difficiles* owned by Kreyol Music and Melodie Makers.

93. From the date of the creation of the infringing work Remastered and Infringing Martino Album, Martino and Plaintiffs have infringed on Kreyol Music and Melodie Maker's copyright interest in the original master sound recording of *Viva Les Difficiles* owned by Kreyol Music and Melodie Makers.

94. Upon information and belief, the Remastered and Infringing Martino Album was licensed for sale, downloads, streams, and/or other exploitations by Martino, Plaintiffs and/or their agents, and its currently available for sale on Spotify, Apple Music, Amazon and other music platforms in violation of Kreyol Music and Melodie Makers's rights.

95. Martino's and Plaintiffs' conduct has been and continues to be knowing, willful, and with complete disregard of Kreyol Music and Melodie Maker' s rights.

96. As a direct and proximate result of Martino's and Plaintiffs' willful conduct, Kreyol Music and Melodie Makers have suffered actual damages, including lost profits, lost opportunities, and loss of goodwill.

97. Pursuant to Haitian Copyright Law and/or 17 U.S.C. § 504(b), Kreyol Music and Melodie Makers are entitled to actual damages, including disgorgement of Martino's and Plaintiffs' profits attributable to the infringement, as will be proven at trial. In the alternative, pursuant to 17 U.S.C. § 504(c), Kreyol Music and Melodie Makers is entitled to the maximum statutory damages of $150,000 per willful infringement. Pursuant to 17 U.S.C. § 505, Kreyol Music and Melodie Makers are also entitled to their costs, including reasonable attorneys' fees and costs.

98. Martino and Plaintiffs' conduct is causing and, unless enjoined by this Court, will continue to cause Kreyol Music and Melodie Makers irreparable injury that cannot be fully compensated or measured in monetary terms. They have no adequate remedy at law, and pursuant to Haitian Copyright Law and/or 17 U.S.C. § 502, Kreyol Music and Melodie Makers are entitled to a preliminary and permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the infringing work *Narcos*.

## COUNT V

### BREACH OF CONTRACT AGAINST MARTINO RELATING TO CREATION OF ANY REMASTERING OF THE SOUND RECORDING *VIVA LES DIFFICILES* AND THE SALE AND EXPLOITATION OF THE ALBUM *THE LEGEND IS BACK*

99. The preceding paragraphs of Kreyol Music and Melodie Maker's claims are realleged and incorporated herein by reference as if fully set forth herein.

42

100. In 2007, Kreyol Music entered a written agreement with Mr. Martino and purchased his second solo album entitled *Oye Chica* and other matters referenced herein as the 2007 Kreyol Music /Martino Agreement.  Kreyol Music purchased all the rights for this album from Mr. Martino for a lump sum cash payment, including the publishing and sound recording rights.

101. Such 2007 Kreyol Music/Martino Agreement was entered between Kreyol Music and Mr. Martino in 2007 regarding (i) the album *Oye Chica*, (ii) an option for another album, as well as (iii) Mr. Martino's obligation "[to] bring to the Label's attention each and every inquiry, proposal or offer it receives relating to Artist's involvement in the music and recording industry."  See 2007 Kreyol Music/Martino Agreement, Paragraphs 1.e, 2.e. and 7.b.

102. For the monetary consideration provided by Kreyol Music, Mr. Martino gave Kreyol Music a right of first refusal with respect to any of his involvement in the music and recording industry.  Under the 2007 Agreement, Mr. Martino was obligated to bring "each and every inquiry, proposal or offer it receives relating to the Artist's involvement in the music and recording industry." Under Section 7.b. of such Agreement, Mr. Martino also agreed that he would not enter agreements with any other persons to represent him with respect to the subject matters covered by such agreement.

103. Under such agreement, Mr. Martino was required to bring to Kreyol Music all music and recording matters relating to *ECX*.  Mr. Martino has claimed, in a declaration submitted in this action, that he assigned to Free World Music "all right, title, and interest in and to the Master Recording of ECX." Besides the fact that he could not do so because the master sound recording of *ECX* is owned by Kreyol Music and Melodie Makers and Mr. Martino had no rights in the sound recording, Mr. Martino was obligated under the 2007 Agreement to bring any matters regarding his involvement in the music industry to Kreyol Music, and his alleged assignment to

Free World Music breached the 2007 Kreyol Music/Martino Agreement.105. Upon information and belief, in 2022, Robert Martino in concert with the Plaintiffs issued a remastering of the sound recording of the album *Viva Les Difficiles* containing *ECX* under the same album title *Viva Les Difficiles* herein referenced as the Remastered and Martino Infringing Album.  The album cover for such Remastered and Infringing Martino Album also substantially copied the title of album and extremely distinctive font of the album's name as well as photographs featured on *Viva Les Difficiles* to make it look confusingly similar to the original *Viva Les Difficiles* album owned by Kreyol Music and Melodie Makers.  Upon information and belief, the sound recording of *ECX* on such Remastered and Infringing Album is an unauthorized copy of *ECX* from *Viva Les Difficiles* for which the publishing and sound recording rights are owned by Kreyol Music and Melodie Makers.  Upon information and belief, Martino and Plaintiffs collaborated together to produce and sell the Remastered and Infringing Martino Album.  Martino and Plaintiffs' conduct with respect to the release and sale of such unauthorized remastered album constitutes copyright infringement of Kreyol Music and Melodie Makers's publishing and sound recording rights in *Viva les Difficiles* and *ECX*.  Martino's conduct with respect to the production and release of the Remastered and Infringing Martino Album also breached the 2007 Kreyol Music/Martino Agreement.

104. Martino and/or Plaintiffs reproduction, release, sale and exploitation of the Remastered and Infringing Martino Album constitutes a material breach of Kreyol Music's rights of first refusal clause under the 2007 Kreyol Music/Martino Agreement and Kreyol Music has been substantially damaged thereby.

105. Martino's release, sale and exploitation of the album *The Legend Is Back* constitutes a material breach of Kreyol Music's rights of first refusal clause under the 2007 Kreyol

Music/Martino Agreement, and Kreyol Music has been substantially damaged thereby.  In addition, in such agreement, Kreyol Music expressly purchased and paid for the publishing and sound recording rights for several songs composed by Mr. Martino, including *Oye Chica* and *Ti DWET*.   In material breach of such Agreement, Mr. Martino, when he released and continues to sell *The Legend is Back,* he included on such album the songs *Oye Chica and Ti DWET* the publishing and sound recording rights which belong to Kreyol Music.  Kreyol Music has been damaged because it has not received the royalties Mr. Martino agreed that Kreyol Music was entitled to for its publishing portion.

106. Kreyol Music has complied with the 2007 Kreyol/Music Martino Agreement.

107. Kreyol Music demands monetary damages, attorneys' fees and costs, and all other available equitable and monetary remedies of any type or kind, against Mr. Martino for his serial, material breaches of the 2007 Kreyol Music/Martino Agreement.

## JURY DEMAND

Kreyol Music and Melodie Makers hereby demand a trial by jury of all issues triable by jury.

## NOTICE OF ISSUE OF FOREIGN LAW

Pursuant to Fed R Civ. P. 44.1, Kreyol Music and Melodie makers herby give notice that they may raise an issue about a foreign country's law, including but not limited to ownership of the musical composition and sound recording ECX under Haitian law.

Respectfully submitted,

BRENNAN LAW FIRM PLLC

By: _____

Kerry A. Brennan

116 West 23rd St., 5th Floor
New York, NY  10011
kerry.brennan@brennanlawpllc.com
Tel.: 212-729-1980

Counsel for Kreyol Music, Inc. and Melodie
Makers, Inc.