UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEEP ON KICKING MUSIC, INC., KEEP ON MOVING MUSIC, INC., and FREE WORLD MUSIC, LIMITED,<br><br>            Plaintiffs,<br><br>   - against -<br><br>UNIVERSAL MUSIC GROUP, INC., UNIVERSAL MUSIC PUBLISHING GROUP, QUALITY CONTROL MUSIC, CAPITOL RECORDS, LLC, MOTOWN RECORDS, IDALY PUBLISHING, INC., KREYOL MUSIC, INC., and MELODIE MAKERS, INC.,<br><br>            Defendants. | No. 23-CV-4400 (JPO) (BCM)<br><br>**KREYOL MUSIC PARTIES' MEMORANDUM IN OPPOSITION TO ROBERT MARTINO'S MOTION TO DISMISS THE THIRD PARTY COMPLAINT** |

UMG RECORDINGS, INC. (incorrectly sued as "Capitol Records, LLC" and "Motown Records"), UNIVERSAL MUSIC CORPORATION (incorrectly sued as "Universal Music Publishing Group"), UNIVERSAL MUSIC GROUP, INC., and QUALITY CONTROL MUSIC, LLC (incorrectly sued as "Quality Control Music"), Counterclaim-Crossclaim Plaintiffs,

   - against -

KEEP ON KICKING MUSIC, INC., KEEP ON MOVING MUSIC, INC., and FREE WORLD MUSIC, LIMITED,
            Counterclaim Defendants,

IDALY PUBLISHING, INC., KREYOL MUSIC, INC., and MELODIE MAKERS, INC.,

            Crossclaim Defendants.

KREYOL MUSIC, INC. and MELODIE MAKERS, INC.,

            Third-Party Plaintiffs and
            Counterclaim-Crossclaim Plaintiffs,

   - against -

1

ROBERT MARTINO,

        Third-Party Defendant,

KEEP ON KICKING MUSIC, INC., KEEP ON MOVING MUSIC, INC., and FREE WORLD MUSIC, LIMITED,

        Counterclaim Defendants,

UMG RECORDINGS, INC., UNIVERSAL MUSIC CORPORATION, UNIVERSAL MUSIC GROUP, INC., QUALITY CONTROL MUSIC, LLC, and IDALY PUBLISHING, INC.,

        Crossclaim Defendants.

# TABLE OF CONTENTS

| | |
|---|---|
| **Table of Authorities** | ii |
| **PRELIMINARY STATEMENT** | 1 |
| **APPLICABLE STANDARD** | 3 |
| **ARGUMENT** | 4 |
| **POINT I** | 4 |
| **THE KREYOL MUSIC PARTIES HAVE SUFFICIENTLY ALLEGED A COPYRIGHT INFRINGEMENT CLAIM AND RELATED CLAIMS** | |
| **POINT II** | 10 |
| **THE KREYOL MUSIC PARTIES' CONTRACT CLAIMS UNDER THEIR 2007 AGREEMENT WITH MARTINO ARE ADEQUATELY PLED** | |
| **CONCLUSION** | 14 |

# TABLE OF AUTHORITIES

***Cases***

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ............................................................................. 3

*Chiykowski v. Golder*, No. 19-cv-2272, 2020 WL 2834225 (S.D.N.Y. May 31, 2020) ..... 6

*Germain v. Martin*, No.1:22-CV-08337 (ALC), 2024 WL 4335613 (S.D.N.Y. Sept. 27, 2024) .................................................................................................. 9

*Global Seafood Inc. v. Bantry Bay Mussels Ltd.,* 659 F.3d 221 (2d. Cir. 2011) ............ 11

*Golan v. Holder*, 565 U.S. 302, 132 S.Ct. 873 (2012) ..................................................... 5

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir. 1998) ..... 5

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57 (2d Cir. 2010) ... 3-4

*Quaratino v. Tiffany & Co.*, 71 F.3d 58 (2d Cir. 1995) .................................................. 10

*Red Apple Media, Inc. v. Batchelor*, No. 23-CV-10253, 2024 WL 1504439 (S.D.N.Y Apr. 8 2024) ............................................................................. 12

*Ruotolo v. City of N.Y.,* 514 F.3d 184 (2d Cir. 2008) ...................................................... 3

*Starr v. Sony BMG Music Entm't,* 592 F.3d 314 (2d Cir. 2010) ...................................... 3

*Urbont v. Sony Music Entm't*, 831 F.3d 80 (2d Cir. 2016) .............................................. 6

**Other**

United States Copyright Office, Circular 38(a), International Copyright Relations of the United States ................................................................. 5

Copyright Office Compendium Chapter 18 and Section 1807.4(e) ................................. 8

37 CFR § 201.7 ................................................................................................................ 8

**KREYOL MUSIC PARTIES' MEMORANDUM IN OPPOSITION TO
ROBERT MARTINO'S MOTION TO DISMISS THE THIRD PARTY COMPLAINT**

Third Party Plaintiffs Kreyol Music Parties, for the reasons set forth herein, respectfully request that this Court deny in its entirety Third Party Defendant Robert Martino's motion to dismiss the Third Party Complaint (ECF #87).

**PRELIMINARY STATEMENT**

*First*, the Kreyol Music Parties respectfully request that this Court deny Martino's motion to dismiss all of the counts of the Third Party Complaint relating to their enforcement of their publishing and sound recording rights in the master sound recording of the album *Viva Les Difficiles*, including the song *Espoir Composition X* (*ECX*), based on the ownership of the copyright therein and their Haitian copyright registration. The master sound recording of *Viva Les Difficiles* was conceived, created, produced, recorded and first released in Haiti by Cine Disc, sold to Jeff Wainwright – owner of the Kreyol Music Parties -- and first registered by Mr. Wainwright under the Copyright Laws of Haiti in 2018. See Third Party Complaint ¶¶ 3-5, 25-38 & 86-87 and Ex A.

Martino's motion to dismiss does not even mention the Kreyol Music Parties' 2018 registration for the master sound recording under the Copyright Laws of Haiti.[1] The Third Party Complaint expressly also alleges: "Haiti is a treaty party under the Berne Convention, and Kreyol Music and Melodie Makers are entitled to enforce their rights in this Court under their Haiti copyright registration." *Id.* ¶ 87. Such Haitian registration along with the Kreyol Music Parties' allegations that the sound recording was conceived, created, produced, recorded and first released in Haiti under Haitian music industry customs for Cine Disc support the Kreyol Music

---

[1] Undersigned counsel contacted Martino's counsel by telephone about the briefing schedule and asked why the Haitian copyright registration that is referenced in and attached to the Third Party Complaint was not addressed in Martino's motion, and no response was received.

1

Parties' position that Haitian law governs the validity of the copyright applicable to *ECX* and the Kreyol Music Parties' ownership of the registration in such work.  Martino overlooks that the totality of the allegations of the Third Party Complaint and erroneously applies U.S. Copyright Act principles to the copyright of master sound recording of the album *Viva Les Difficiles*.  The Third Party Complaint alleges with sufficient detail that the master sound recording was conceived, created, produced and first released in Haiti and created under the music customs in Haiti by Cine Disc, sold to Jeff Wainwright and first registered for copyright protection in Haiti in 2018.  Martino has not identified any aspect of Haitian Copyright Law that the Kreyol Music Parties have not pled to assert their rightful ownership of the publishing rights and sound recording rights in the master sound recording of the album *Viva Les Difficiles* containing the song *ECX*.

*Second*, the thrust of Martino's argument -- that the Kreyol Music Parties' allegations of copyright ownership are insufficient -- is baseless.  The Kreyol Music Parties allege with sufficient detail that the master sound recording of *Viva Les Difficiles*, including *ECX*, was conceived in 1978; created and produced by Cine Disc, a Haitian music production company, under the music customs of Haiti; recorded in Haiti; and first released in Haiti.   Third Party Complaint ¶¶ 25-38.  The Kreyol Music Parties further asserts that they purchased all of the rights in the master sound recording from Cine Disc in 1995.  The notary papers submitted for the Haitian registration also state that Jeff Wainwright, owner of the Kreyol Music Parties, presented the original master sound recording to the Haitian notary as part of the registration process.[2]  *Id.* Ex. A (see English translation).  Martino's attempt to apply U.S. Copyright Act

---

[2] Note that Plaintiffs' Amended Complaint (ECF #15) contains <u>no</u> allegations as to how Martino acquired the publishing and sound recording rights in the master recording of the 1978 album *Viva Les Difficiles* containing *ECX*; it simply alleges that he created and authored the composition and recorded the song and not how the master sound recording for *Viva Les Difficiles* – which contains other songs performed by

2

principles to a work created under the Copyright Laws of Haiti are inapplicable.

*Third*, the remaining contractual claims against Martino are adequately pled and should not be dismissed for failure to state claims. Martino's four arguments (i) are contrary to the specific allegations of Third Party Complaint, (ii) expressly contradict the terms of the 2007 Agreement (which Martino identified to this Court at Martino Memo at 8 (ECF #80-3)), or are frivolous as discussed in this memorandum.

## APPLICABLE STANDARD

On a motion to dismiss, this Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Ruotolo v. City of N.Y.,* 514 F.3d 184, 188 (2d Cir. 2008). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (internal citations omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir.2010). In ruling on a motion to dismiss, a "court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,* 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation and citation omitted).

---

other band members -- was conceived, created and produced.

3

**ARGUMENT**

**POINT I**

**THE KREYOL MUSIC PARTIES HAVE SUFFICIENTLY
ALLEGED A COPYRIGHT INFRINGEMENT CLAIM
AND RELATED CLAIMS**

The Kreyol Music Parties have sufficiently alleged in the Third Party Complaint that they are the sole owners of the publishing and sound recording rights in the master sound recording of *Viva Les Difficiles*, including the song *ECX*, based on their copyright therein and their Haitian copyright registration in support of their request for declaratory relief as to their rights, their copyright infringement claims against Martino and their request that the Plaintiff's subsequent U.S. Copyright Registration, on which Martino is identified as author, be cancelled.[3]

**A. The Kreyol Music Parties have adequately alleged copyright ownership and copying to plead a copyright infringement claim**

The master sound recording of *Viva Les Difficiles* was conceived, created, produced, recorded and first released in Haiti by Cine Disc, all of the rights therein sold to Jeff Wainwright and the copyright first registered under the Copyright Laws of Haiti. *See, e.g.*, Third Party Complaint ¶¶ 3-5, 25-38 & 86-87. Third Party Complaint ¶ 3 also expressly states: "In 2018, Kreyol Music, via its owner Jeff Wainwright, filed and recorded its sole and exclusive rights in the master recording *Viva Les Difficiles* under the Copyright Law of Haiti. Attached as Exhibit A hereto is a copy of such official filing and an English translation thereof." In their infringement count against Martino, ¶ 87 states: "Haiti is a treaty party under the Berne Convention, and Kreyol Music and Melodie Makers are entitled to enforce their rights in this Court under their Haiti copyright registration."

---

[3] The Kreyol Music Parties have not sought to cancel the Plaintiff's separate U.S. Copyright Registration in the composition of *ECX* (which identifies Martino as author) as distinct from the master sound recording of *Viva Les Difficiles*.

The Second Circuit has held that "[c]opyright is a form of property, and the usual rule is that the interests of the parties in property are determined by the law of the state with 'the most significant relationship' to the property and the parties. The Restatement recognizes the applicability of this principle to intangibles such as 'a literary idea.'" *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90-91(2d Cir. 1998) (internal citations omitted). For the reasons stated throughout this memorandum, Haiti is the place with the most significant relationship to the creation and production of the master sound recording for the album *Viva Les Difficiles*, including the song *ECX*, and the publishing and sound recording rights of *ECX* for purposes of determining the applicable law.

United States Copyright Office, Circular 38(a), International Copyright Relations of the United States, available at: www.copyright.gov/circs/circ38a.pdf, identifies Haiti as a signatory party to the Berne Convention for the Protection of Literary and Artistic Works. The Supreme Court summarized the obligatory nature and the influence of Berne in the *Golan* case in 2012:

> The Berne Convention for the Protection of Literary and Artistic Works (Berne), which took effect in 1886, is the principal accord governing international copyright relations. Berne's 164 member states agree to provide a minimum level of copyright protection and to treat authors from other member countries as well as they treat their own …

*Golan v. Holder*, 565 U.S. 302, 132 S.Ct. 873, 874 (2012). Under the Berne Convention and Section 104(c) of U.S. Copyright Act, the Kreyol Music Parties may enforce their rights in U.S. federal courts in their ownership of the copyright and copyright registration in the master sound recording of *Viva Les Difficiles* including the song *ECX*.

The Kreyol Music Parties' copyright infringement allegations are sufficient. Generally, "[t]o prove a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Cf. Urbont v.*

5

*Sony Music Entm't*, 831 F.3d 80, 88 (2d Cir. 2016). With respect to a claim for copyright infringement of a foreign copyright work protected under the Berne Convention, this Court has held that a plaintiff must allege (i) the work that is subject to the copyright claim, (ii) plaintiff's ownership of the copyright in the work, (iii) that the subject work is not a United States work, and (iv) defendant's infringement of the copyright in the work. *Chiykowski v. Golder*, No. 19-cv-2272, 2020 WL 2834225 *3 (S.D.N.Y. May 31, 2020). The Kreyol Music Parties have satisfied these pleading requirements.

First, the Kreyol Music Parties have identified the subject copyright work – the master sound recording of the album *Viva Les Difficiles,* including the song *ECX*. Third Party Complaint ¶¶ 3-5 & 25-38.

Second, the Kreyol Music Parties have pled that they acquired the ownership of all rights in the master sound recording of *Viva Les Difficiles*. The Kreyol Music Parties have specifically alleged creation of a new album in 1978 at the behest of Cine Disc in which its music producer/owner Yvon Cine gathered certain current and former members of the band *Les Difficiles de Petion Ville* to record an album (Martino being a former member in 1978 when the album *Viva Les Difficiles* was created). The CD cover presented in the complaint indicated that Cine Disc was the owner of the album which it licensed in 1994 to the original Melodie Makers. *Id.* ¶ 340. The Kreyol Music Parties allege that they acquired all of the rights in *Viva Les Difficiles* from Cine Disc in 1995. *Id.* ¶ 38. They then recorded their rights under the Copyright Laws of Haiti in 2018, which Haitian law (Article 10) is cited in the notarized papers submitted to the applicable Haitian government agency. *Id.* ¶¶ 86-87 and Ex. A.

Third, they have pled that this work was conceived, created, produced, recorded and first released in Haiti. Third Party Complaint ¶¶ 3-5 & 25-38. (There is no allegation that the work

6

was created or first published in the United States).

Fourth, they have pled infringement by Martino in reproducing and distributing, without authorization, a remastered album that copies the master sound recording of *Viva Les Difficiles* under the same title and a substantially similar album cover.

> 88. Upon information and belief, in 2022, Robert Martino in concert with the Plaintiffs released and sold a remastering of the sound recording of the album *Viva Les Difficiles* containing *ECX* under the same album title *Viva Les Difficiles* herein referenced as the Remastered and Infringing Martino Album. The Remastered and Infringing Martino Album is currently being sold on Spotify, Apple Music and Amazon as well as other music platforms in flagrant violation of Kreyol Music and Melodie Makers's rights.
>
> 89. The album cover for such Remastered and Infringing Martino Album also substantially copied the identical title of album, the extremely distinctive font of the album's name as well as the photographs featured on *Viva Les Difficiles* to make the remastered album look confusingly similar to the original *Viva Les Difficiles* album owned by Kreyol Music and Melodie Makers which copyrighted elements were protected under the copyright registration obtained in Haiti for the album.
>
> 90. Upon information and belief, such Remastered and Infringing Martino Album **is an unauthorized copy of the complete sound recording of *Viva Les Difficiles*** for which the publishing and sound recording rights are owned solely and exclusively by Kreyol Music and Melodie Makers. Upon information and belief, Martino and Plaintiffs collaborated together to produce and sell the Remastered and Infringing Martino Album.

Third Party Complaint ¶¶ 88-90 (emphasis added). The Third Party Complaint also contains copies of the CD cover of the album of *Viva Les Difficiles* as distributed by Kreyol Music Parties since 1995 to this day and the substantially similar CD cover on the remastered and infringing album also titled *Viva Les Difficiles* released in 2022. *Compare* Third Party Complaint at 27 and 33.

Accordingly, the Kreyol Music Parties maintain that they have alleged sufficient factual matter in support of their copyright infringement claims against Martino.

7

### B. The Kreyol Music Parties have adequately alleged related claims seeking declaratory relief and cancellation of Plaintiff's subsequent copyright registration based on their ownership of the copyright in *Viva Les Difficiles* and Haitian copyright registration

The Kreyol Music Parties' allegations of copyright ownership, discussed above, also support their request for (i) declaratory relief that they are the sole owners of the copyright in the master sound recording of the album *Viva Les Difficiles* and its publishing and sound recording rights (Count I), and (ii) cancellation of Plaintiff's subsequent U.S. Copyright Registration for the sound recording of *ECX,* which according to 37 CFR § 201.7 and Copyright Office Compendium Chapter 18 and Section 1807.4(e), Mr. Martino as claimed author is required to be a party (Count III).

### C. The Kreyol Music Parties have plausibly alleged how Cine Disc conceived, created and produced the master sound recording of the album *Viva Les Difficiles*, including *ECX*, and transferred those rights to the Kreyol Music Parties

The Kreyol Music Parties have provided sufficient detail as to how the new master sound recording titled *Viva Les Difficiles* was conceived, created and produced by Cine Disc in 1978 and the various persons involved in such production in which Cine Disc acquired all rights and the copyright therein, and the subsequent transfer of all rights in such master sound recording to the Kreyol Music Parties in 1995. Third Party Complaint ¶¶ 3-5, 25-38 & 86-87 and Ex. A. The Kreyol Music Parties also referenced the customs of the Haitian music industry under which the album was created. *Id.* at 29. The Kreyol Music Parties in 2018 recorded their rights under the Copyright Laws of Haiti. The Kreyol Music Parties have adequately stated the grounds for their entitlement to relief.[4]

---

[4] Indeed, the Kreyol Music Parties' allegations are far more extensive than Plaintiffs' allegations in their Amended Complaint ¶ 28 (ECF #15) where Plaintiffs merely states that Martino recorded the song *ECX* and Plaintiffs do not plead any involvement of the band *Les Difficiles de Petion Ville*, it band leader Henry Celestin or the producer Yvon Cine of Cine Disc. Martino is the one with no viable explanation as

8

Martino's Memo omits any mention of the Haitian law and suggests, without any basis, that U.S. Copyright Act principles of work made for hire apply to Haitian copyright ownership in the master sound recording. Martino does not state any legal basis under the Copyright Laws of Haiti for invoking the U.S. Copyright Act with respect to work made for hire to argue that the pleading is insufficient. Therefore, Martino's argument of inadequate pleading of copyright ownership (Martino Memo at 5) fails.

Moreover, contrary to *Germain v. Martin*, No.1:22-CV-08337 (ALC), 2024 WL 4335613, at *4 (S.D.N.Y. Sept. 27, 2024), cited at Martino Memo at 5, the Kreyol Music Parties' allegations do not focus solely on the registration of their rights under the Copyright Laws of Haiti, but rather the Kreyol Music Parties have pled sufficient facts as to how the master sound recording was conceived, created, produced, recorded and released and the persons involved in 1978 at the behest of music producer Cine Disc, their acquisition of all of the rights in the master sound recording from Cine Disc in 1995, and their registration of such rights in Haiti in 2018. Kreyol Music Parties have distributed the *Viva Les Difficiles* album since 1995 without challenge from anyone, including Martino, until this case arose.

Furthermore, certain of Martino's arguments challenge (without any substantiation), the truth of the allegations in the Third Party Complaint which allegations must be accepted at this juncture. As an example, in response to the Kreyol Music Parties' factual allegations of how Cine Disc acquired the rights in the copyright of the album *Viva Les Difficiles*, Martino states: "***If*** [band leader] Mr. Celestin never owned the rights, then neither did Mr. Cine or Kreyol Music Parties." Martino Memo at 6 (emphasis added). See also Martino's challenge of the truth of the

---

how he obtained in 1978 the copyright ownership of the master sound recording (as distinct from the copyright ownership in the composition) which rights in *Viva Les Difficiles* he thereafter apparently abandoned for more than 40 years until he assigned rights to the Plaintiffs in 2023 to file a U.S. copyright registration in the sound recording of *ECX*.

9

same allegation at Martino Memo at 8.  Such objection to the truth of the allegations is not valid on a motion to dismiss.

If this Court requires more detailed factual matter about the circumstances of the creation of the master sound recording of *Viva Les Difficiles*, including the song *ECX*, which original master sound recording is in the physical possession of the Kreyol Music Parties, then the Kreyol Music Parties request leave to amend their Third Party Complaint.  Leave to supplement should be freely given in the absence of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).

## POINT II

### THE KREYOL MUSIC PARTIES' CONTRACT CLAIMS UNDER THEIR 2007 AGREEMENT WITH MARTINO ARE ADEQUATELY PLED

Martino does not raise any challenges under F.R.C.P. 12(b)(6) to the Kreyol Music Parties' contract claims under the 2007 written agreement with Robert Martino.  *See* 2007 Agreement cited by Martino at ECF #80-3 and accompanying Declaration of Kerry A. Brennan, dated November 21, 2024, Exhibit A.  Martino does not identify any elements of the breach of contract claim set forth in Count V that are inadequately pled.  All of Martino's objections are baseless.

First, regarding the forum selection clause in the 2007 Agreement, Martino did not move to dismiss on the ground that this Court lacks subject matter jurisdiction under F.R.C.P. 12(b)(3).  Contrary to Martino's argument (Martino Memo at 8), the forum selection clause in Kreyol Music's agreement with Martino is not mandatory.  The provision states that Florida "will have jurisdiction over this contract" (see Brennan Decl. Ex A. Section 7.j.); it does not state that such

10

jurisdiction is exclusive or mandatory.  Where the parties contract merely to a *permissive* forum selection clause and do not preclude a different choice, a party can select another forum. "Forum selection clauses lacking any clear exclusionary or obligatory language—i.e., 'specific language of exclusion'—are, therefore, permissive and not subject to a presumption of enforceability."  *Global Seafood Inc. v. Bantry Bay Mussels Ltd.,* 659 F.3d 221, 22 (2d. Cir. 2011).  Martino raises no objection that this Court is inconvenient for him, and he has previously submitted a declaration in support of Plaintiffs before this Court.  *See* ECF #72.

Second, Martino also states, without any factual basis, that there can be no breach of the 2007 Agreement because the contract ended.  Martino Memo at 9.  Such contention is factually incorrect and frivolous.  Sections 1.e. and 5 of the 2007 Agreement expressly states that Kreyol Music has the right to distribute the *Oye Chica* album in "perpetuity" (one of the subjects of Count V against Martino).  There are no other shorter terms applicable to any of the other contractual provisions which are claimed to have been breached.  Brennan Decl. Exhibit A. Section 5.  Moreover, contrary to Martino's argument, the grant to Kreyol Music of publishing rights in works they produced under the 2007 Agreement, including *Oye Chica*, and to collect royalties did not expire.  Martino is required to accept the factual allegations as true.

Third, citing no case law and contrary to the express factual allegations of Count V, Martino erroneously and frivolously asserts that the Kreyol Music Parties' "contract claim lacks credible allegations of damages." Martino Memo at 10.  As an example, Kreyol Music specifically pleads that it was entitled to publishing and sound recording rights in the contracted for works (Third Party Complaint ¶ 100) and that it did not receive the royalties in Martino's newly released works which included songs from the album *Oye Chica* that were produced by Kreyol Music under the contract (*id.* at 105).  Paragraph 105 of the Third Party Complaint states

11

in relevant part:

> In material breach of such Agreement, Mr. Martino, when he released and continues to sell *The Legend is Back,* he included on such album the songs *Oye Chica and Ti DWET* the publishing and sound recording rights which belong to Kreyol Music. Kreyol Music has been damaged because it has not received the royalties Mr. Martino agreed that Kreyol Music was entitled to for its publishing portion.

The Kreyol Music Parties' failure to receive compensation for its publishing rights constitutes contractual damages. Moreover, Kreyol Music also alleges that future work by Martino should have been brought to Kreyol Music, that he in fact released additional work, e.g. *The Legend is Back* album, and that they were damaged by being excluded from such additional music industry work. All of such damage allegations are grounded in the provisions of the Agreement and are indeed "credible."

Fourth, Martino makes a baseless argument that Kreyol Music's contractual arguments are pre-empted by copyright law. Martino Memo at 11. The contractual claim asserted in Count V relating to the *Oye Chica* album is solely predicated in contract law and not copyright law. *See* Third Party Complaint ¶¶ 100, 102 & 105-107. There is no allegation in the Third Party Complaint sounding in copyright law relating to the *Oye Chica* album, and no copyright infringement claim relating to *Oye Chica*, and Martino points to none. Martino's counsel's reference to *Red Apple Media, Inc. v. Batchelor*, No. 23-CV-10253, 2024 WL 1504439, at *6 (S.D.N.Y Apr. 8 2024) stopped short of citing the applicable sentence: "On the other hand, where a contract claim seeks to vindicate a right beyond those provided by Copyright law, *such as a promise to pay*, the claim is not preempted." (emphasis added). Kreyol Music reasonably believe its rights relating to *Oye Chica* sounded in contract under the 2007 Agreement. If, however, Martino's wrongful distribution of songs from the *Oye Chica* album and the failure to pay Kreyol Music (which had rights in perpetuity) contrary to the 2007 Agreement sound in

12

copyright rather than contract, then Kreyol Music requests leave to amend its complaint to add a claim sounding in copyright.

The Kreyol Music Parties also state a contractual cause of action distinct from a copyright infringement claim in the *Viva Les Difficiles* album and *ECX* sound recording. In its contractual claim in Count V, Kreyol Music also states that:

> For the monetary consideration provided by Kreyol Music, Mr. Martino gave Kreyol Music a right of first refusal with respect to any of his involvement in the music and recording industry. Under the 2007 Agreement, Mr. Martino was obligated to bring "each and every inquiry, proposal or offer it receives relating to the Artist [Martino]'s involvement in the music and recording industry." Under Section 7.b. of such Agreement, Mr. Martino also agreed that he would not enter agreements with any other persons to represent him with respect to the subject matters covered by such agreement.

Third Party Complaint ¶ 102. The 2007 Agreement contained an exclusive representation clause that prohibited Martino from entering into music industry agreements with others including Plaintiffs here and that they sustained separate damages from such breach. In addition, although doubtful, if Plaintiffs and/or Martino could establish that Martino had a valid copyright in the entire master recording of *Viva Les Difficiles*[5] to enable him to release the remastered infringing album also titled *Viva Les Difficiles*, which wholly copies the master sound recording of *Viva Les Difficiles* (which contains songs performed by other members of the band *Les Difficiles de Petion Ville*), Martino also would breached the 2007 Agreement because he did not present the opportunity to release a new album (including the remastered album) to Kreyol Music as required under the agreement.

---

[5] Plaintiffs, via Martino's assignment, only have a 2023 copyright registration in *ECX*, which we seek to cancel; neither Plaintiffs nor Martino own a copyright or copyright registration in the entire sound recording of the album of *Viva les Difficiles*.

13

## **CONCLUSION**

For the reasons set forth herein, Third Party Plaintiffs Kreyol Music and Melodie Makers respectfully requests that this Court deny Martino's motion to dismiss its entirety.

Respectfully submitted,

BRENNAN LAW FIRM PLLC


By: _____/s/ Kerry A. Brennan_____
      Kerry A. Brennan

116 West 23rd St., 5th Floor
New York, NY  10011
kerry.brennan@brennanlawpllc.com
Tel.: 212-729-1980

Counsel for Defendants and Third Party Plaintiffs Kreyol Music, Inc. and Melodie Makers, Inc.