UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEEP ON KICKING MUSIC, INC., *et al.*, <br>       Plaintiffs, <br><br> -v- <br><br> UNIVERSAL MUSIC GROUP, *et al.*, <br>       Defendants. | 23-CV-4400 (JPO) <br><br> OPINION AND ORDER |

UNIVERSAL MUSIC GROUP, *et al.*,
  Counterclaim-Crossclaim Plaintiffs,

-v-

KEEP ON KICKING MUSIC, INC., *et al.*,
  Counterclaim Defendants,

IDALY PUBLISHING, INC., *et al.*,
  Crossclaim Defendants.

KREYOL MUSIC, *et al.*,
  Third-Party Plaintiffs and Counterclaim-Crossclaim Plaintiffs,

-v-

ROBERT MARTINO,
  Third-Party Defendant,

KEEP ON KICKING MUSIC, INC., *et al.*,
  Counterclaim Defendants,

UNIVERSAL MUSIC GROUP, *et al.*,
  Crossclaim Defendants.

J. PAUL OETKEN, District Judge:

1

This case involves a dispute over the rightful ownership of a musical composition, "Espoir Composition X," or "ECX."[1] Third-Party Plaintiffs Kreyol Music, Inc. ("Kreyol") and Melodie Makers, Inc. ("Melodie") (collectively "Third-Party Plaintiffs"), filed a complaint against Third-Party Defendant Robert Martino, who they allege (1) infringed their copyright of "ECX" in the album *Viva Les Difficiles* in violation of Haitian copyright laws and the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and (2) breached a 2007 contract regarding the sale of other music rights to Kreyol and Melodie by his participation in the remastering and rerelease of "ECX" and several other songs.

Before the Court is Martino's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted as to Third-Party Plaintiffs' copyright infringement claim and breach of contract claim regarding the rerelease of "ECX," and denied as to Third-Party Plaintiffs' breach of contract claim as to the rerelease of the songs "Oye Chica" and "Ti DWET."

**I.     Background**

    **A.     Factual Background**

Unless otherwise noted, the following facts are taken from the Third-Party Plaintiffs' complaint (ECF No. 87 at 19-46 ("TP Compl."))[2] and are assumed to be true for the purposes of

---

[1] Third-Party Plaintiffs italicize the song title "ECX" in their third-party complaint. All such instances have been unitalicized and placed in quotation marks, in accordance with prevailing guidelines governing the citation of song titles. *See* The Chicago Manual of Style ¶ 8.196 (18th ed. 2024). The same is true of other relevant songs, including "Oye Chica" and "Ti DWET."

[2] Between their answer and third-party complaint, Third-Party Plaintiffs restart their paragraph numbers. For purposes of this opinion, all citations to paragraph numbers in "TP Compl." refer to the paragraph numbers between pages 19 and 46 of ECF No. 87.

2

this motion.[3] *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013); *Restellini v. Wildenstein Plattner Inst., Inc.*, 20-CV-4388, 2021 WL 4340824, at *2 (S.D.N.Y. Sept. 22, 2021) ("The standard for a motion to dismiss a complaint, counterclaim, and third-party complaint is the same—the allegations in the complaint, counterclaims, and third-party claims are taken as true, and all reasonable inferences are drawn in the non-movant's favor.").

### 1. Composition and Production of "ECX"

Robert Martino is a musician who played as a guitarist for the band Les Difficiles de Petion Ville during "the mid-1960s in Haiti." (TP Compl. ¶¶ 25-26.) During his tenure in the band, Martino wrote the song "ECX." (*Id.* ¶¶ 26-27.) Third-Party Plaintiffs allege that Henry Celestin, who was "the principal owner and leader of the band," was also the owner of the band's "composition, publishing and then existing sound recording rights." (*Id.* ¶¶ 25, 28.)

Martino left Les Difficiles de Petion Ville in 1970, and in 1976, Celestin retired, and the band stopped performing as a group. (*Id.* ¶¶ 27, 30.) However, sometime thereafter, Yvon Cline, the owner of another Haitian record label, Cine Disc, "came up with the idea" of getting "most of the original musicians" from Les Difficiles de Petion Ville back together, including Celestin and Martino, and doing "a remake of some of their greatest hits," including "ECX." (*Id.* ¶¶ 31-32.) These remade songs were compiled into an album called *Viva Les Difficiles*, which was produced by Cine Disc and "first released in Haiti." (*Id.* ¶¶ 32-33.) In 1995, Cine sold his

---

[3] There are a few factual discrepancies between Third-Party Plaintiffs' account of events and Plaintiffs' telling in their First Amended Complaint. For example, Plaintiffs allege that "ECX" was first recorded by Martino in 1978 (ECF No. 15 ¶ 28), while Third-Party Plaintiffs' timeline appears to place the original recording of "ECX" sometime before 1970. (*See* TP Compl. ¶ 27.) However, because the Court is considering a motion to dismiss the claims of Kreyol and Melodie, it must take their account of events as true.

3

rights in the master recording of *Viva Les Difficiles* to Jeff Wainwright, the owner of Kreyol and Melodie.[4]  (*See id.* ¶¶ 3, 23, 37-38.)

Martino "sought to register 'ECX' in France" in 2000 by filing an application with the Société des Auteurs, Compositeurs et Éditeurs de Musique ("SACEM").  (*Id.* ¶ 49.)  According to Third-Party Plaintiffs, Martino claimed to be the author and composer of the song, but not the owner.  (*See id.* ¶¶ 49-50.)

In 2018, Melodie "sought to protect all of its rights to the master recording of *Viva les Difficiles*" pursuant to "Article 10 of the Haiti Decree of 1968 on the rights of authors, literary works, scientifics and artistics."  (*Id.* ¶ 47.)  To do so, "Wainwright appeared before a notary in Haiti who notarized and ratified Melodie Makers's publishing and sound recording rights in *Viva Les Difficiles*."  (*Id.*)

Also in 2018, though it is not clear if this was before or after Wainwright appeared before the Haitian notary, the American musical group Migos released a song called "Narcos" that "contained a sampling of 'ECX'."  (*See id.* ¶ 48.)  And in 2021, "Plaintiff Keep on Kicking Music, Inc. received a U.S. Copyright registration . . . for [the authorship of] 'ECX' based on its representation that the date of publication was July 1, 1978."  (*Id.* ¶ 52.)

In 2022, Martino, working with the Plaintiffs in the original action, "issued a remastering of the sound recording of the album *Viva Les Difficiles* containing 'ECX' under the same album

---

[4] Third-Party Plaintiffs state that Melodie was originally owned by "[t]hree equal partners, one of them being Jeff Wainwright," but that in the summer of 1995 the partners "had a disagreement, and the company became inactive."  (TP Compl. ¶ 23.)  However, "[i]n 2010, Jeff Wainwright took control of Melodie."  (*Id.*)  The Court assumes for the sake of this motion that Wainwright had the authority to unilaterally purchase music rights from Cine on behalf of Melodie in 1995.

title *Viva Les Difficiles*." (*Id.* ¶ 54.) This remastered album "is currently for sale on Spotify, Apple Music and Amazon" as well as other music platforms. (*Id.*)

### 2. 2007 Contract

In 2007, Martino and Kreyol entered into an agreement regarding the album *Oye Chica* and a possible subsequent solo album from Martino ("2007 Contract"). (*Id.* ¶ 44.) That contract states, in relevant part:[5]

> Artist jointly and severally, hereby irrevocably agrees to sell to Company the Master Recordings of nine songs of the album "OYE CHICA". He engages Company as his sole and exclusive recording label, production, publishing, distribution and promotion Company in the entertainment, music and recording field throughout the whole universe for the Artist and for the following:
>
> First Album: Robert Martino "Oye Chica"
> "Venere Konpa", "Nou Kole", "Ti Dwet", "Dim saw' Vle", "A Toi", "I'm gonna love you", "Ti Moun yo", "Oye Chica", "Opa Opa".
>
> Second Album: First Option

(ECF No. 80-3 ("Contract") at 2 (capitalization altered).) The contract goes on to state in the same section:

> It is understood and agreed that Company shall have the sole and exclusive publishing rights of all the songs, melodies or other music created by Artist jointly and severally under the duration of this contract and for the albums considered.

(*Id.* at 3 (capitalization altered).) And in a subsequent section labeled "Obligations," the contract enumerates a list of requirements for Martino including:

---

[5] Because Third-Party Plaintiffs' breach of contract claim hinges upon the terms of the 2007 Contract, the Court may properly consider the contract language incorporated by reference. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim . . . ."); *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) (extending *Cortec* to contracts).

>To bring to the Label's attention each and every inquiry, proposal and/or offer it receives relating to the Artist's involvement in the music and recording industry.

(*Id.* (capitalization altered).)

Since 2007, Kreyol "has paid Mr. Martino royalties for certain distribution works, and he was paid twice annually for such works." (TP Compl. ¶ 45.) However, in 2021, "Mr. Martino and/or Plaintiffs released the album *The Legend Is Back*," which included "Oye Chica" and "Ti DWET," both of which had been named as songs sold to Kreyol in the 2007 Contract. (*See id.* ¶¶ 58, 62(m).)

### B. Procedural Background

This case was commenced on May 26, 2023, when Plaintiffs Keep on Kicking Music, Inc., Keep on Moving Music, Inc., and Free World Music, Limited filed their complaint, naming Third-Paty Plaintiffs as defendants. (ECF No. 7.) Plaintiffs then filed an amended complaint on October 2, 2023. (ECF No. 15.)

Relevant to the present motion, Third-Party Plaintiffs filed an answer with third-party claims against Martino on August 21, 2024. (TP Compl.) Martino moved to dismiss the third-party complaint on October 22, 2024 (ECF No. 109) and filed an accompanying memorandum of law (ECF No. 110 ("Mem.")). Third-Party Plaintiffs opposed the motion on November 21, 2024 (ECF No. 114 ("Opp.")), and Martino replied in further support of his motion on December 5, 2024 (ECF No. 116 ("Reply")).

## II. Legal Standards

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will be dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In ruling on a motion to dismiss, the Court must accept the plaintiff's factual allegations as true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

### III. Discussion

Martino moves to dismiss Third-Party Plaintiffs' copyright infringement claims relating to "ECX" and the album *Viva Les Difficiles*.[6] (Mem. at 8), as well as their breach of contract claims regarding Martino's remastering of the songs "ECX," "Oye Chica," and "Ti DWET" (*id.* at 12-15).

#### A. Copyright Infringement

"To establish a claim of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). While the Copyright Act requires parties bringing an infringement claim for "United States work[s]" to first obtain "preregistration or registration" of their copyright, 17 U.S.C. § 411(a), "non-United States works—generally, works first published outside the United States in a foreign country that is a signatory to the Berne Convention [for the Protection of Literary and Artistic Works]—are exempt from registration."

---

[6] Third-Party Plaintiffs clarify in their opposition memorandum that "Kreyol Music Parties have not sought to cancel the Plaintiff's separate U.S. Copyright Registration in the composition of 'ECX' (which identifies Martino as author) as distinct from the master sound recording of *Viva Les Difficiles*." (Opp. at 8 n.3.) However, because the album *Viva Les Difficiles* includes the song "ECX," the copyright of the sound recording of "ECX" is also still at issue here.

*DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 555 (S.D.N.Y. 2018).  Third-Party Plaintiffs claim that the sound recording of *Viva Les Difficiles*, including the song "ECX," is a foreign work covered by the Berne Convention (Opp. at 8-9), and the Court agrees.  Both the song "ECX" and the album *Viva Les Difficiles* were first published in Haiti (*see* TP Compl. ¶¶ 25, 27, 32-33), which has been a signatory to the Berne Convention since 1996.[7]

The next question is which law governs the issue of foreign copyright ownership.  Third-Party Plaintiffs are correct that the Second Circuit has largely settled this choice-of-law question.  (*See* Opp. at 9.)  "Copyright is a form of property, and the usual rule is that the interests of the parties in property are determined by the law of the state with 'the most significant relationship' to the property and the parties."  *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90 (2d Cir. 1998) (quoting Restatement (Second) of Conflict of Laws § 222).  "ECX" was written in Haiti (TP Compl. ¶¶ 25-27), and "ECX" and *Viva Les Difficiles* were first recorded and released in Haiti (*id.* ¶¶ 25-28, 32, 33), so Haitian law has the most significant relationship and thus governs the question of ownership.  *See Itar-Tass*, 153 F.3d at 90 (applying Russian law to a copyright dispute concerning news articles "created" and "first published" in Russia).

"[T]he party claiming foreign law applies,"—Third-Party Plaintiffs here (*see* Opp. at 9)—"carries . . . the burden of proving foreign law to enable the district court to apply it in a particular case."  *Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 330 (S.D.N.Y. 2015) (quotation marks omitted).  Other than briefly mentioning "the Copyright Laws of Haiti" (*see* TP Compl. ¶¶ 66, 86; Opp. at 10) and reciting "Article 10 of the decree of January 9, 1968 on the rights of

---

[7] *See* Contracting Parties, Berne Convention, *World Intell. Prop. Org.*, www.wipo.int/wipolex/en/treaties/ShowResults?search_what=C&treaty_id=15 (last visited May 21, 2025).

authors, literary works, Scientifics and Artistic [Works]," which merely outlines the "rights of authors" over works they own (*see* ECF No. 87-1 at 3-4), Third-Party Plaintiffs have failed to cite any case law, treatise, or other authority on Haitian law.  Nor have they provided expert briefing, which, while not the only way, "remains the basic mode of proving foreign law." *See Jonas*, 116 F. Supp. 3d at 330 (quotation marks omitted).

This lack of information about Haitian law undermines Third-Party Plaintiffs' claims of ownership over the sound recording of "ECX."  Third-Party Plaintiffs allege that Martino originally wrote the song "ECX" in Haiti, but that he did so "as a work for hire for the band *Les Difficiles de Petion Ville*," owned by Henry Celestin, thus transferring ownership of "ECX" to Celestin.  (*See* TP Compl. ¶ 27.)  However, while the "work-for-hire" theory of ownership is recognized under United States copyright law if the employer is able to allege an employer-employee relationship under the common law of agency,[8] *see Horror Inc. v. Miller*, 15 F.4th 232, 242-43 (2d Cir. 2021), Third-Party Plaintiffs have put forward no evidence that the same doctrine is recognized in Haitian law.  Thus, the Court cannot determine whether Martino's ownership of "ECX" can be transferred to Celestin under the work-for-hire doctrine.

---

[8] Under United States copyright law, Third-Party Plaintiffs have failed to allege adequate facts relating to Martino's status as an employee to raise the work-for-hire doctrine.  *See Horror Inc. v. Miller*, 15 F.4th 232, 242-43 (2d Cir. 2021) ("[I]f the individual qualifies as an employee 'under the general common law of agency,' and the work is prepared within the scope of his employment, then the work that he prepares for his employer is a work for hire.  If, however, the individual is merely an independent contractor 'as understood by common-law agency doctrine,' then the work will not qualify as a work for hire." (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 738, 740, 751 (1989))).  Indeed, beyond just stating the conclusory determination that Martino created "ECX" as a "work for hire," they have not alleged any specific facts about the conditions of Martino's employment.  (*See* TP Compl. ¶¶ 27, 32.)  Thus, even assuming the Haitian work-for-hire doctrine exists, Third-Party Plaintiffs would have to identify case law indicating that Haitian law requires a lesser relationship than the American common law conception of the employer-employee relationship to trigger the exception.

9

Second, even assuming Celestin owned "ECX," Third-Party Plaintiffs have failed to state if and how that ownership was then transferred to Cine, the man who allegedly sold the rights to the sound recording of "ECX" and *Viva Les Difficiles* to Wainwright and, by extension, Third-Party Plaintiffs. (*See* TP Compl. ¶¶ 37-38.) While Third-Party Plaintiffs allege that "ECX" was included in the remake album *Viva Les Difficiles*, which was owned by Cine, they immediately thereafter state that "Martino's participation in *Viva Les Difficiles* was as a work for hire for Mr. Celestin who, upon information and belief, owned the band *Les Difficiles de Petion Ville* and all the composition, publishing and sound recording rights of the band and its members." (*Id.* ¶ 32.) Thus, it would appear from Third-Party Plaintiffs' account that Celestin would still have ownership over "ECX" and the other songs by the members of Les Difficiles de Petion Ville in *Viva Les Difficiles*, so long as Haitian copyright law recognizes a work-for-hire doctrine that would transfer the sound recording rights to Celestin in the first place. And there is no explanation in the third-party complaint of how Cine eventually came to own "ECX" and the other songs in the album that Celestin allegedly owned. Without this crucial fact, Third-Party Plaintiffs' ownership of the sound recordings of "ECX" and *Viva Les Difficiles* have not been sufficiently alleged.

Third-Party Plaintiffs ignore all of these complexities and instead argue that all they need to do to adequately allege ownership is to state in their pleadings "that they acquired the ownership of all rights in the master sound recording of *Viva Les Difficiles*." (Opp. at 10) They contend they have met this burden by submitting a translation of a Haitian affidavit by Jeff Wainwright swearing that "he is the sole owner and he has the exclusive right of" the sound recording of *Viva Les Difficiles*, including "ECX" (ECF No. 87-1 at 1, 3) and stating that Wainwright "filed, recorded, and registered [Kreyol's] sole and exclusive rights in the master

recording for the album *Viva Les Difficiles*, including 'ECX' under the Copyright Laws of Haiti" (TP Compl. ¶ 86).  But a mere statement, sworn before a notary or not, that Wainwright or Third-Party Plaintiffs own a copyright, without more, is a conclusory statement of law, because the question of ownership sufficient to trigger copyright liability is a legal determination, *see Itar-Tass*, 153 F.3d at 90.  Further, stating that a party "registered" said copyright "under the Copyright Laws" of a foreign nation, without explaining what registration requires, what entity accepts and determines the validity or registration, and whether Third-Party Plaintiffs met those requirements, does not clear the plausibility threshold of a motion to dismiss, particularly when the same parties have alleged a series of events that contain two clear gaps in the work's chain of copyright ownership.  Ultimately, Third-Party Plaintiffs' failure to explain Haitian copyright law, failure to substantiate Cine's ownership, and failure to plead basic facts about the copyright registration prevent the Court from crediting their conclusory statements that Kreyol and/or Melodie (via Wainwright) own the current sound recording copyright for *Viva Les Difficiles* and "ECX."

Martino's motion to dismiss Third-Party Plaintiffs' copyright infringement claims against him is thus granted.

### B. Breach of Contract

In addition to their copyright infringement claims, Third-Party Plaintiffs allege that Martino separately violated the 2007 Contract between the parties.  (TP Compl. ¶ 58.)  First, Third-Party Plaintiffs allege that by releasing the album *The Legend Is Back* in 2021, which included the songs "Oye Chica" and "Ti DWET," Martino violated the terms of the 2007 Contract granting the rights to production and distribution of those songs to Kreyol.  (*See id.* ¶¶ 58, 105; Contract at 2.)  Second, they allege that Martino violated the contract's clauses regarding the right of first refusal and right of notice for Martino's actions in the recording

11

industry by the 2022 rerelease of "ECX." (TP Compl. ¶ 54.) Defendants move to dismiss both breach of contract claims, arguing that (1) any disputes regarding this contract should be heard in Florida, (2) the 2007 Contract "ended with the release of [Martino's] Second Album," (3) Third-Party Plaintiffs' claims lack "any credible allegations of damages," and (4) these contract claims are preempted by copyright law. (Mem. at 12-14.)

        **1.**        **Jurisdiction Clause**

Martino first argues that any disputes over the 2007 Contract should be litigated in Florida due to a jurisdiction clause in the agreement. (*Id.* at 12.) The final line of the 2007 Contract states: "The parties hereby agree that in the event of disputes, litigations and lawsuits, the court of the state of Florida will have jurisdiction over this contract." (Contract at 5.) The agreement does not specify what kind of jurisdiction the parties agreed to, but because a party cannot contract out of subject matter jurisdiction, *see Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016), the Court reads the clause as a waiver of the parties' right to object to personal jurisdiction in Florida. However, while such a clause would grant a Florida court personal jurisdiction over Kreyol and Martino in the event that a dispute was brought there, it does not preclude this Court from exercising jurisdiction. And even if the Court could convert this Rule 12(b)(6) motion to a motion to transfer venue pursuant to Rule 12(b)(3), as Martino urges in a footnote of his Reply (*see* Reply at 7 n.1), the Second Circuit has made it clear that "[f]orum selection clauses lacking any clear exclusionary or obligatory language—i.e., specific language of exclusion—are, therefore, permissive and not subject to a presumption of enforceability." *Glob. Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011) (quotation marks omitted). There is no such exclusionary or clearly obligatory language here, and thus a transfer is not required.

## 2. Term of the Contract

Martino next argues that the 2007 Contract does not govern his release of the album *The Legend is Back* or the remastering of "ECX" because the term of the agreement had concluded. (Mem. at 13.)  The 2007 Contract states that Kreyol is the "sole and exclusive recording label, production, publishing, distribution and promotion company" for Martino's album *Oye Chica*, which includes the songs "Ti Dwet" and "Oye Chica." (Contract at 2 (capitalization altered).) Within that same sub-section, the contract states:

> It is understood and agreed that Company shall have the sole and exclusive publishing rights of all the songs, melodies, or other music created by Artist jointly and severally under the duration of this contract and for the albums considered.

(*Id.* at 3 (capitalization altered).)

"At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Comms. Corp.*, 830 F.3d 152, 156 (2d Cir. 2016). A contract is ambiguous where a term "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, Eng.*, 136 F.3d 82, 86 (2d Cir. 1998) (quotation marks omitted).

The 2007 Contract is unambiguous as to the substantive scope of its coverage:  It applies to the production and distribution rights of the *Oye Chica* album and the "first option" for one subsequent album by Martino.  (Contract at 2 (capitalization altered).)  Thus, the language in the "obligations" section that states that Martino must "bring to the Label's attention each and every inquiry, proposal and/or offer it receives relating to the Artist's involvement in the music and recording industry" (*id.* at 3 (capitalization altered)), unambiguously relates only to those inquiries, proposals, and offers Martino receives related to *Oye Chica* and the next album he

released after it. The language throughout the 2007 Contract refers to "the albums considered" and "the two albums," clearly indicating that the obligations imposed on Martino relate only to the rights to *Oye Chica* and the first option on a subsequent album, not to every other musical work Martino produces thereafter. (*See id.*) To hold otherwise would convert this agreement covering the rights of a single album and a first option on another album into a contract covering the rest of Martino's career as a musician. The words of the 2007 Contract cannot be stretched that far.

Because of the narrow scope of this agreement, the remastering of "ECX" in 2022, which was not included in the album *Oye Chica* and which Third-Party Plaintiffs do not allege was included in the album Martino recorded immediately after *Oye Chica*, is not covered by the 2007 Contract. The breach of contract claim regarding the remastering of "ECX" is thus dismissed.

However, the 2007 Contract is ambiguous regarding the duration of the agreement as it relates to the album *Oye Chica*. Though the agreement does refer to "the duration of this contract," seemingly indicating that the parties did not envision that the 2007 Contract would last indefinitely, it provides no further clarification about when the agreement would terminate. (*See id.* at 3.) There is thus a reasonable interpretation of the 2007 Contract that would mean that the agreement was still in force in 2021 when Martino rereleased the songs "Oye Chica" and "Ti DWET" without Kreyol's consent. The breach of contract claim regarding the rerelease of "Oye Chica" and "Ti DWET" in the album *The Legend if Back* thus survives Martino's motion.

### 3. Claim for Damages

Martino further asks the Court to dismiss the breach of contract claims relating to the 2007 Contract's notice requirement because they "lack[] any credible allegations of damages." (Mem. at 14.) The notice clause requires Martino "[t]o bring to the Label's attention each and

14

every inquiry, proposal and/or offer it receives relating to the Artist's involvement in the music and recording industry." (Contract at 3 (capitalization altered).) While the Court has already held that the 2007 Contract does not cover "ECX" and thus no notice was required before Martino remastered that song, *see supra* Section III.B.2, the Court can "reasonably infer" the damages that would be "attributable" to Third-Party Plaintiffs' claim that Martino did not bring his rerelease of "Oye Chica" and "Ti DWET" to their attention. *Arcidiacono v. Maizes & Maizes, LLP*, 778 N.Y.S.2d 270, 270 (1st Dep't 2004). If they had had prior notice of Martino's offers regarding these rereleases, Third-Party Plaintiffs could have brought suit before the songs were rereleased to preserve the status quo and/or tried to entice Martino to work with them on such a project, which would have resulted in profits for Third-Party Plaintiffs.

### 4. Preemption

Martino's final argument in favor of dismissal is that "Third-Party Plaintiffs' contract claims sound in copyright," so they are preempted by copyright law. (Mem. at 14.) Because the Court has already dismissed the breach of contract claim for "ECX," it addresses only Martino's assertion that "the contract claims relating to 'Oye Chica' and 'Ti DWET'—the two songs on *The Legend is Back*—should be dismissed because they are copyright claims disguised as contract claims." (*Id.* at 15.)

The Second Circuit has held that "[a] state law right is equivalent to one of the exclusive rights of copyright if it may be abridged by an act which, in and of itself, would infringe one of the exclusive rights." *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 48 (2d Cir. 2019) (quotation marks omitted). Third-Party Plaintiffs seek more than "solely to vindicate an exclusive right under the Copyright Act," however. *Cf. id.* This is not a case, such as *Universal Instrumentals*, 924 F.3d at 48-49, the Second Circuit case law that precedes it, *see, e.g.*, *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424 (2d Cir. 2012), or

15

the sole case cited by Martino, *Red Apple Media, Inc. v. Batchelor*, 729 F. Supp. 3d 350, 364 (S.D.N.Y. 2024), where the scope or duration of a copyright license is at issue. Instead, this is a question of a label's control over "production, publishing, distribution and promotion" of an album they have purchased in exchange for $15,000. (*See* Contract at 2, 4.) For example, if the new versions of "Oye Chica" and "Ti DWET" are found to be sufficiently unique remastered versions that would not violate the Copyright Act, the rerelease of them may still violate the terms of the 2007 Contract. Further, Third-Party Plaintiffs have alleged that Martino failed to give them notice of "each and every inquiry, proposal or offer [Martino] receive[d] relating to [Martino's] involvement in the music and recording industry." (Contract at 3.) Such a notice requirement is not protected, and thus not preempted, by the Copyright Act.

### C. Leave to Amend

Third-Party Plaintiffs have requested leave to amend their third-party complaint "[i]f this Court requires more detailed factual matter about the circumstances of the creation of the master sound recording of *Viva Les Difficiles*, including the song 'ECX'." (Opp. at 14.)

District courts are to "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). Though the Court is given discretion in deciding whether to grant a subsequent motion for leave to amend, "that discretion must be exercised in terms of a justifying reason or reasons consonant with the liberalizing 'spirit of the Federal Rules.'" *United States ex rel. Maritime Admin. v. Continental Ill. Nat. Bank & Tr. Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989) (quoting *Foman v. Davis*, 371 U.S. 178, 181 (1962)). Some of the reasons to deny a motion for leave to amend include "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman*, 371 U.S. at 182).

Third-Party Plaintiffs' copyright infringement claims fail due to (1) a lack of briefing about Haitian law, whether a work-for-hire doctrine exists, and whether Martino's relationship to Celestin would qualify under it; and (2) a lack of information about how the ownership of the sound recordings of "ECX" and the other songs in *Viva Les Difficiles* were transferred from Martino to Celestin and then from Celestin to Cine. *See supra* Section III.A. Thus, Third-Party Plaintiffs are granted leave to amend their copyright infringement claim to the extent that they can provide the missing information to fill in these gaps. The parties are further directed to file a letter within 14 days of this Opinion and Order proposing a schedule for briefing the Court on Haitian copyright law and the doctrine of work-for-hire.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED as to the copyright infringement claim and breach of contract claim regarding the remastering of "ECX" and *Viva Les Difficiles*, and those claims are DISMISSED. The motion to dismiss is DENIED as to the breach of contract claim regarding "Oye Chica" and "Ti DWET."

Third-Party Plaintiffs are granted leave to amend the third-party complaint, provided that any amended complaint must be filed within 28 days of this Opinion and Order. They shall file either an amended complaint or a letter indicating that they do not intend to amend their complaint by that date.

The Clerk of Court is directed to terminate the motion at ECF Number 109.

SO ORDERED.

Dated: June 12, 2025
New York, New York

_____
J. PAUL OETKEN
United States District Judge