IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEEP ON KICKING MUSIC, INC., KEEP ON MOVING MUSIC, INC., and FREE WORLD MUSIC, LIMITED,<br><br>          Plaintiffs,<br>-against-<br><br>UNIVERSAL MUSIC GROUP, INC., UNIVERSAL MUSIC PUBLISHING GROUP, QUALITY CONTROL MUSIC, CAPITOL RECORDS, LLC, MOTOWN RECORDS, IDALY PUBLISHING, INC., KREYOL MUSIC, INC., and MELODIE MAKERS, INC.,<br><br>          Defendants. | Case No. 23-CV-4400 (JPO) (BCM) |
| UMG RECORDINGS, INC. (incorrectly sued as "Capitol Records, LLC" and "Motown Records"), UNIVERSAL MUSIC CORPORATION (incorrectly sued as "Universal Music Publishing Group"), UNIVERSAL MUSIC GROUP, INC., and QUALITY CONTROL MUSIC, LLC (incorrectly sued as "Quality Control Music"),<br><br>          Counterclaim Plaintiffs,<br>-against-<br><br>KEEP ON KICKING MUSIC, INC., KEEP ON MOVING MUSIC, INC., and FREE WORLD MUSIC, LIMITED,<br><br>          Counterclaim Defendants. | **ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' AMENDED COMPLAINT; ANSWER AND AFFIRMATIVE DEFENSES TO UNIVERSAL CROSSCLAIM PLAINTIFFS' CLAIMS; KREYOL MUSIC AND MELODIE MAKERS'S COUNTERCLAIMS, CROSS CLAIMS AND <u>FIRST AMENDED</u> THIRD PARTY CLAIMS AGAINST ROBERT MARTINO**<br><br>**JURY TRIAL DEMANDED** |
| UMG RECORDINGS, INC. (incorrectly sued as "Capitol Records, LLC" and "Motown Records"), UNIVERSAL MUSIC CORPORATION (incorrectly sued as "Universal Music Publishing Group"), UNIVERSAL MUSIC GROUP, INC., and QUALITY CONTROL MUSIC, LLC (incorrectly sued as "Quality Control Music"),<br><br>          Crossclaim Plaintiffs,<br>-against-<br>IDALY PUBLISHING, INC. KREYOL MUSIC, INC. AND MELODIE MAKERS, INC.,<br>          Crossclaim Defendants. | |

KREYOL MUSIC, INC. and MELODIE MAKERS, INC.,
Third Party Plaintiffs and Counterclaim/Crossclaim Plaintiffs,

-against-

ROBERT MARTINO,

Third Party Defendant,

KEEP ON KICKING MUSIC, INC., KEEP ON MOVING MUSIC, INC., FREE WORLD MUSIC, LIMITED,

Counterclaim Defendants, and

UMG RECORDINGS, INC., UNIVERSAL MUSIC CORPORATION, UNIVERSAL MUSIC GROUP, INC., QUALITY CONTROL MUSIC, LLC, and IDALY PUBLISHING, INC.,

Crossclaim Defendants.

Defendants Kreyol Music, Inc. and Melodie Makers, Inc., by their undersigned counsel, allege as follows for their answer to Plaintiffs' Amended Complaint, their answer to Crossclaim Plaintiffs UMG Recordings, Inc., Universal Music Corporation, Universal Music Group, Inc. and Quality Control Music, LLC (the "Universal Music Parties")'s Crossclaims and for their related amended third party claims against Robert Martino, counterclaims against Plaintiffs, and crossclaims against the Universal Music Parties and Idaly Publishing:

## ANSWER TO PLAINTIFFS KEEP ON KICKING MUSIC, INC.,
## KEEP ON MOVING, INC. AND FREE WORLD MUSIC LIMITED'S
## <u>AMENDED COMPLAINT</u>

1.      Paragraph 1 of the Plaintiffs' Amended Complaint contains allegations of law, not fact, or characterizations of the claims in this action, to which no response is required; to the extent a response is required, the allegations are denied.

2.      Kreyol Music and Melodie Makers JW[1] deny the allegations in Paragraph 2 of the Amended Complaint.  Kreyol Music and Melodie Makers JW contend that they are the rightful owners of the publishing and sound recording rights in the musical composition Espoir /Composition X (referred herein as "ECX") contained on the album *Viva les Difficiles* purchased from its original owner and Executive Producer Yvon Cine of Cine Disc in 1995 for which they registered their owner ownership right in Haiti in 2018.

3.      Paragraph 3 of the Amended contains allegations of law, not fact, or characterizations of the claims in this action, to which no response is required; to the extent a response is required, the allegations are denied.

4.      Kreyol Music and Melodie Makers JW deny the allegations in Paragraph 4 of the Amended Complaint to the extent they purport to provide definitive definitions of music terms from an unidentified source.

---

[1] In 2010, Jeff Wainwright acquired the corporate name Melodie Makers and formed the currently operating Melodie Makers, Inc. referred herein as "Melodie Makers JW."  Mr. Wainwright had formerly been a partner with two other individuals at an earlier and distinct company also named Melodie Makers, Inc. formed in 1998 with FEIN #65-0070710, referred herein as "Melodie Makers I," which company became inactive in summer 1995 and was abandoned.

5.      Kreyol Music and Melodie Makers JW deny the allegations in Paragraph 5 of the Amended Complaint to the extent they purport to provide definitive definitions of music terms from an unidentified source, and otherwise deny the allegations.

6.      In response to Paragraph 6 of the Amended Complaint, Kreyol Music and Melodie Makers JW admit that the hip hop group Migos willfully sampled the musical composition and sound recording of "ECX" in their song "Narcos."  Kreyol Music and Melodie Makers JW are without information to answer the remaining allegations and therefore denies them.

7.      Kreyol Music and Melodie Makers JW are without information to answer the allegations in Paragraph 7 of the Amended Complaint and therefore denies them.

8.      In response to Paragraph 8 of the Amended Complaint, Kreyol Music and Melodie Makers JW deny that the Plaintiffs are the rightful owners of "ECX." Kreyol Music and Melodie Makers JW admit that they became aware of license agreements from Idaly Publishing, Inc. relating to the sampling of "ECX" in Migos's song "Narcos."  Kreyol Music and Melodie Makers is without information to answer the remaining allegations in Paragraph 8 of the Amended Complaint at this time, and therefore denies them.

9.      Kreyol Music and Melodie Makers JW deny the allegations in Paragraph 9 of the Amended Complaint and respectfully refer the Court to the documents referenced therein for the contents thereof.

10.      Kreyol Music and Melodie Makers JW admit that the hip hop group Migos willfully sampled the musical composition and sound recording of "ECX" in their song "Narcos," and otherwise to the extent Paragraph 10 of the Amended Complaint contains

allegations of law, not fact, or characterizations of the claims in this action, to which no response is required; to the extent a response is required, the allegations are denied.

11.    Kreyol Music and Melodie Makers JW admit that Idaly Publishing had no rights of any kind in the musical composition and sound recording of "ECX" and that Idaly Publishing purported to grant rights to such work relating to Migos's sampling of "ECX" in the song "Narcos." Otherwise, Paragraph 11 of the Amended Complaint contains allegations of law, not fact, or characterizations of the claims in this action, to which no response is required; to the extent a response is required, the allegations are denied.

12.    Kreyol Music and Melodie Makers JW admit that they continue to assert their rights in "ECX." Kreyol Music and Melodie Makers JW deny that Plaintiffs are entitled to declaratory judgment against them.

13.    Kreyol Music and Melodie Makers JW deny that Plaintiffs should grant declaratory judgment against them, and Kreyol Music and Melodie Makers JW are without information to answer the remaining allegations in Paragraph 13 of the Amended Complaint at this time, and therefore denies them.

14.    Kreyol Music and Melodie Makers JW deny that Plaintiffs have any rights in "ECX," and Kreyol Music and Melodie Makers JW are without information to answer the remaining allegations in Paragraph 14 of the Amended Complaint at this time, and therefore denies them.

15.    Kreyol Music and Melodie Makers JW are without information to answer the allegations in Paragraph 15 of the Amended Complaint at this time, and therefore denies them.

16.    Kreyol Music and Melodie Makers JW deny the allegations of Paragraph 15 of the Amended Complaint.

17.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 17 of the Amended Complaint.

18.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 18 of the Amended Complaint.

19.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 19 of the Amended Complaint.

20.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 20 of the Amended Complaint.

21.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 21 of the Amended Complaint.

22.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 22 of the Amended Complaint.

23.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 23 of the Amended Complaint.

24.     Kreyol Music is a music publisher and Melodie Makers JW is a record label and both are owned by Jeff Wainwright; they have offices at 911 N.W 85th Ter., Plantation, Florida 33324.

25.     Paragraph 25 of the Amended Complaint contains allegations of law, not fact, or characterizations of the claims in this action, to which no response is required; to the extent a response is required, the allegations are denied.

26.     Kreyol Music and Melodie Makers JW deny that this Court has personal jurisdiction over them, and Kreyol Music and Melodie Makers JW are without information to

answer the remaining allegations in Paragraph 26 of the Amended Complaint at this time, and therefore denies them.

27.     Kreyol Music and Melodie Makers JW deny that this Court is the proper venue for this action.

28.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 28 of the Amended Complaint.

29.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 29 of the Amended Complaint, and refer the Court to the exhibits referenced in such allegations for their content.

30.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 30 of the Amended Complaint, and refer the Court to the exhibit referenced in such allegations for its content.

31.     Kreyol Music and Melodie Makers JW became aware of Migos's release of the song "Narcos" containing a sampling of the musical composition and sound recording of "ECX," and otherwise Kreyol Music and Melodie Makers deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 31 of the Amended Complaint.

32.     Kreyol Music and Melodie Makers JW refer the Court to the recording of the song "Narcos" for its content, and they are without information to answer the remaining allegations in Paragraph 32 of the Amended Complaint at this time, and therefore denies them.

33.     Kreyol Music and Melodie Makers JW admit that the hip hop group Migos willfully sampled in their song "Narcos" the musical composition and sound recording "ECX," the work that is the subject of this action.

34.     Kreyol Music and Melodie Makers JW admit that the hip hop group Migos willfully sampled in their song "Narcos" the musical composition and sound recording "ECX," the work that is the subject of this action. Kreyol Music and Melodie Makers JW otherwise state that they are without information to answer the remaining allegations in Paragraph 34 of the Amended Complaint, including the premature expert report, at this time, and therefore denies them.

35.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 35 of the Amended Complaint.

36.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 36 of the Amended Complaint, and refer the Court to the exhibit referenced in such allegations for its content.

37.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 37 of the Amended Complaint.

38.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 38 of the Amended Complaint, and refer the Court to the exhibit referenced in such allegations for its content.

39.     Kreyol Music and Melodie Makers JW deny the Plaintiffs have any rights in the musical composition and sound recording of "ECX," and otherwise deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 39 of the Amended Complaint.

40.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 40 of the Amended Complaint, and refer the Court to the exhibit referenced in such allegations for its content.

41.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 41 of the Amended Complaint, and refer the Court to the exhibit referenced in such allegations for its content.

42.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 42 of the Amended Complaint, and refer the Court to the exhibit referenced in such allegations for its content.

43.     Kreyol Music and Melodie Makers JW contend that they are the rightful owners of the publishing and sound recording rights in the musical composition "ECX" and the owner of the sound recording of "ECX" contained on the album *Viva les Difficiles* which was purchased from Yvon Cine of Cine Disc its original owner and executive producer in 1995.   Kreyol Music and Melodie Makers JW deny the allegations in Paragraph 43 and refer the Court to the cited exhibits for their content.

44.     Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 44 of the Amended Complaint, except that Kreyol Music and Melodie Makers JW are generally aware that Plaintiffs have wrongly contacted certain music rights organizations and maintained that they own certain rights in "ECX" contrary to Kreyol Music and Melodie Makers JW's rights in "ECX."

45.     Kreyol Music and Melodie Makers admit that there is an actual controversy about the rights in "ECX," but they deny that this Court has personal jurisdiction over them with respect to this dispute and that this forum is inconvenient given that not a single witness resides in this jurisdiction.

46.     Kreyol Music and Melodie Makers JW repeat and reallege their responses to the allegations in Paragraphs 1 - 45 of the Plaintiff's Amended Complaint.

47.    Kreyol Music and Melodie Makers JW deny the allegations in Paragraph 47 of the Complaint because, among other things, Plaintiffs have no rights in the musical composition "ECX."

48.    Kreyol Music and Melodie Makers JW repeat and reallege their responses to the allegations in Paragraphs 1 - 45 of the Plaintiffs' Amended Complaint.

48.    [sic]Kreyol Music and Melodie Makers deny the allegations in Paragraph 48 of the Complaint because, among other things, Plaintiffs are not the sole and rightful owner of all right, title and interest in the musical composition "ECX."

Prayer for Relief: Kreyol Music and Melodie Makers deny the allegations in Prayer for Relief of the Complaint because, among other things, Plaintiffs are not the sole and rightful owner of all right, title and interest in the musical composition "ECX."

## AFFIRMATIVE AND OTHER DEFENSES TO PLAINTIFFS' CLAIMS

To the extent that it is Plaintiff's burden to prove any of the issues raised in the defenses set forth below, Kreyol Music and Melodie Makers hereby preserve, and do not waive their legal position that Plaintiffs have a burden of proof on those issues.  Moreover, the Amended Complaint may not describe the claims or facts with sufficient particularity to permit Defendants to identify all defenses that may exist.  Defendants reserve the right to amend their Answer in order to assert defenses that may become apparent in the course of discovery in this litigation. Subject to the foregoing, Kreyol Music and Melodie Makers assert the following defenses:

### FIRST DEFENSE

The Amended Complaint, and each of its purported claims for relief, fails to state a claim upon which relief can be granted.

10

**SECOND DEFENSE**

Plaintiffs do not have any publishing or sound recording rights in whole or part to the musical composition and master sound recording of "ECX."

**THIRD DEFENSE**

Plaintiffs do not own a valid copyright and/or copyright registration in the musical composition or sound recording of "ECX."

**FOURTH DEFENSE**

Upon information and belief, Plaintiffs have no rights and do not own a valid copyright registration in the sound recording of "ECX" that was used in the sampling of such work by Migos in their song "Narcos."

**FIFTH DEFENSE**

The sound recording of "ECX" sampled by Migos in their song "Narcos" was authored and created by the record producer Cine Disc and is now owned by Melodie Makers JW. Such sound recording of "ECX" was never owned by Robert Martino at any time, and thereby Mr. Martino had no rights in such sound recording to convey to Plaintiffs, and thus, Plaintiffs have no rights in such sound recording. Pursuant to 37 CFR § 201.7 and Copyright Office Compendium Chapter 18 and Section 1807.4(e), this Court should direct Mr. Martino, as claimed author, and Plaintiff Free World Music, Ltd., as claimed owner, to cancel before the U.S. Copyright Office the Copyright Reg. No. SRO 412-913 filed on February 16, 2023 (after this lawsuit was commenced) in the sound recording of "ECX" cited as Exhibit 3 in the Amended Complaint because they do not have any rights in the sound recording of "ECX" referenced therein. Therefore, Plaintiffs claims for declaratory judgment that they are the rightful owner of such sound recording copyright in "ECX" fails to state a claim and is invalid.

**SIXTH DEFENSE**

To the extent that Plaintiffs have any rights in or a valid copyright in any aspect of "ECX," Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations under the U.S. Copyright Act.  See 17 U.S.C. § 507(b).

**SEVENTH DEFENSE**

Plaintiff's claims and/or requested remedies against Kreyol Music and Melodie Makers JW, if any, are barred by the doctrine of laches as a result of their action or the waiver by Robert Martino from whom they claim to have been assigned rights in "ECX."

**EIGHTH DEFENSE**

Plaintiffs' claims and/or requested remedies against Kreyol Music and Melodie Makers JW, if any, are barred by the doctrine of waiver as a result of their actions or the waiver by Robert Martino from whom they claim to have been assigned rights in "ECX."

**NINTH DEFENSE**

Plaintiffs' claims are barred to the extent that allegations in the Amended Complaint refer generally to "Defendants" without any factual basis to distinguish each individual Defendant's alleged conduct.

**ANSWER TO THE UNIVERSAL MUSIC PARTIES' CROSSCLAIMS AGAINST KREYOL MUSIC AND MELODIE MAKERS JW (the "CROSSCLAIMS")**

45.     Paragraph 1 of the Crossclaims contain characterizations of the claims in this action, to which no response is required.

46.     Kreyol Music and Melodie Makers JW admit the first sentence of Paragraph 2 of the Crossclaims.  Kreyol Music and Melodie Makers JW deny the second sentence to the extent that Idaly Publishing, Inc. did not have any rights in "ECX" to convey to Universal Music Parties in the license agreements referenced in this allegation.

47.    Kreyol Music and Melodie Makers JW refer this Court to license agreements referenced in Paragraph 3 of the Crossclaims for the content thereof and other deny the allegations.

48.    Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 4 of the Crossclaims, except to the extent that they admit that Universal Music Parties instituted a legal hold on the distribution of royalties relating Migos's sampling of "ECX" in their song "Narcos."

49.    Paragraph 5 of the Crossclaims contain characterizations of the claims and relief sought by Universal Music Parties in this action, to which no response is required.

50.    Paragraph 6 of the Crossclaims contain characterizations of the claims and relief sought by Universal Music Parties in this action, to which no response is required.

51.    Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 7 of the Crossclaims,

52.    Kreyol Music and Melodie Makers JW deny the allegations in Paragraph 8 of the Crossclaims.

53.    Kreyol Music and Melodie Makers JW deny the allegation in Paragraph 9 of the Crossclaims.

54.    Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 10 of the Crossclaims.

55.    Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 11 of the Crossclaims.

56.    Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 12 of the Crossclaims.

57.    Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 13 of the Crossclaims.

58.    Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 14 of the Crossclaims.

59.    Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 15 of the Crossclaims.

60.    Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph16 of the Crossclaims.

61.    Kreyol Music and Melodie Makers JW admit the allegations in Paragraph 17 of the Crossclaims.

62.    Kreyol Music and Melodie Makers JW refer this Court to the Master Use License referenced in Paragraph 18 of the Crossclaims for the content thereof and otherwise deny the allegations.

63.    Kreyol Music and Melodie Makers JW refer this Court to the Master Use License referenced in Paragraph 19 of the Crossclaims for the content thereof and otherwise deny the allegations.

64.    Kreyol Music and Melodie Makers JW refer this Court to the Master Use License referenced in Paragraph 20 of the Crossclaims for the content thereof and otherwise deny the allegations.

65.    Kreyol Music and Melodie Makers JW refer this Court to the Publishing Use Agreement referenced in Paragraph 21 of the Crossclaims for the content thereof and otherwise deny the allegations.

66.    Kreyol Music and Melodie Makers JW refer this Court to the Publishing Use Agreement referenced in Paragraph 22 of the Crossclaims for the content thereof and otherwise deny the allegations.

67.    Kreyol Music and Melodie Makers JW refer this Court to the Publishing Use Agreement referenced in Paragraph 23 of the Crossclaims for the content thereof and otherwise deny the allegations.

68.    Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in Paragraph 24 of the Crossclaims.

69.    Kreyol Music and Melodie Makers JW admit the allegations in Paragraph 25 of the Crossclaims.

70.    Kreyol Music and Melodie Makers JW deny knowledge or information sufficient to form a belief as to the allegations in first sentence of Paragraph 26 and otherwise refer the Court to Letter of Direction referenced in Paragraph 26 for the content thereof and other deny the allegations.

71.    Kreyol Music and Melodie Makers JW were aware of the Letter of Direction and received certain distributions from Universal Music Parties and otherwise deny the allegations in Paragraph 27.

72.    Kreyol Music and Melodie Makers JW admit that the Universal Crossclaim Plaintiffs instituted a legal hold on the distribution of royalties relating Migos's sampling of "ECX" in their song "Narcos" and otherwise deny the allegations in Paragraph 28 of the Crossclaims.

73.    Kreyol Music and Melodie Makers JW repeat and reallege their responses to the allegations in Paragraphs 1 - 29 of the Crossclaims.

74.

    a.   In response to Paragraph 30(a) of the Crossclaims, upon information and belief, Idaly did not and does not have any rights in the musical composition "ECX" or the sound recording of such work that was sampled in Migos's song "Narcos" and did not have the right to enter into the Master Use Agreement and Publishing Use Agreement with the Universal Music Parties, and Kreyol Music and Melodie Makers JW otherwise deny the allegations in Paragraph 30(a) of the Crossclaims.

    b.   In response to Paragraph 30(b) of the Crossclaims, Kreyol Music and Melodie Makers JW are the sole owners of the sound recording of "ECX" sampled in Migos's song "Narcos," and to the extent they previously accepted certain distributions from the Universal Music Parties, such actions were appropriate and in connection with those payments the Universal Music Parties correctly assumed that they had an implied license to the exploitation of Kreyol Music and Melodie Makers JW's rights in the musical composition and sound recording of "ECX"; Kreyol Music and Melodie Makers JW otherwise deny the allegations in Paragraph 30(b) of the Crossclaims.

    c.   In response to Paragraph 30(b) of the Crossclaims, Kreyol Music and Melodie Makers JW are the sole owners of the sound recording of "ECX" sampled in Migos's song "Narcos" and are entitled to royalties, and admit that Idaly is no longer entitled to any royalties because, upon information and belief, Idaly did not and does not have any rights in the musical composition "ECX" or the sound recording of such work that was sampled in Migos's song "Narcos" and

did not have the right to enter into the Master Use Agreement and Publishing Use Agreement with the Universal Music Parties; Kreyol Music and Melodie Makers JW otherwise deny the allegations in Paragraph 30(c) of the Crossclaims.

75.    Kreyol Music and Melodie Makers JW repeat and reallege their responses to the previous allegations of the Crossclaims as if fully set forth herein.

76.    Because this claim and allegations are alleged only against Idaly, therefore Kreyol Music and Melodie Maker JW are not required to respond.

77.    Because this claim and allegations are alleged only against Idaly, therefore Kreyol Music and Melodie Maker JW are not required to respond.

78.    Because this claim and allegations are alleged only against Idaly, therefore Kreyol Music and Melodie Maker JW are not required to respond.

79.    Kreyol Music and Melodie Makers JW repeat and reallege their responses to the previous allegations of the Crossclaims as if fully set forth herein.

80.    Because this claim and allegations is alleged only against Idaly, therefore Kreyol Music and Melodie Maker JW are not required to respond.

81.    Because this claim and allegations is alleged only against Idaly, therefore Kreyol Music and Melodie Maker JW are not required to respond.

82.    Kreyol Music and Melodie Makers JW repeat and reallege their responses to the previous allegations of the Crossclaims as if fully set forth herein.

83.    Kreyol Music and Melodie Makers JW received and accepted distribution of royalty payments pursuant to a Letter of Direction to the Universal Music Parties, and they otherwise deny the remaining allegations in Paragraph 39.

84.     At the time that Migos sampled the musical composition and sound recording of "ECX" in their song "Narcos," Kreyol Music and Melodie Makers JW owned publishing rights and was the sole owner of the sound recording of "ECX" from which the sampling in "Narcos" was created and they continue to own those same rights today; Kreyol Music and Melodie Makers JW were, are and continue to be entitled to royalties on the sampling use of "ECX" in Migos's song "Narcos"; and they are deny the remaining allegations in Paragraph 40.

85.     Kreyol Music and Melodie Makers JW deny the allegations in Paragraph 41.

86.     Kreyol Music and Melodie Makers JW deny the allegations in Paragraph 42.

## AFFIRMATIVE AND OTHER DEFENSES TO UNIVERSAL MUSIC PARTIES' CROSSCLAIMS

To the extent that it is the Universal Music Parties' burden to prove any of the issues raised in the defenses set forth below, Kreyol Music and Melodie Makers JW hereby preserve, and do not waive their legal position that the Universal Music Parties have a burden of proof on those issues.  Moreover, the Universal Music Parties Crossclaims may not describe the claims or facts with sufficient particularity to permit Kreyol Music and Melodie Makers JW to identify all defenses that may exist.  Kreyol Music and Melodie Makers JW reserve the right to amend their Answer in order to assert defenses that may become apparent in the course of discovery in this litigation.

### DEFENSE TO ALL OF THE UNIVERSAL MUSIC PARTIES' CROSSCLAIMS

Kreyol Music and Melodie Makers JW own the publishing rights in the musical composition in "ECX" and own the master recording of the album *Viva les Difficiles* containing the musical composition "ECX," and its accompanying sound recording rights, from which Migos sampled "ECX" in their song "Narcos."   In 2018, Kreyol Music, via its owner Jeff

Wainwright, filed and recorded its sole and exclusive rights in the master recording and album *Viva les Difficiles* under the Copyright Law of Haiti to protect all of the copyrights in such recording and album.  Accordingly, Kreyol Music and Melodie Makers JW have at all times been entitled to receive royalties from Migos and the Universal Music Parties in connection with their publishing and sound recording rights in "ECX" and they continue to be entitled to receive such royalties as a result of Migos and the Universal Music Parties' exploitation of Kreyol Music and Melodie Makers JW's rights by the sampling of "ECX" in Migos's song "Narcos."

## NATURE OF KREYOL MUSIC AND MELODIE MAKERS'S COUNTERCLAIMS, CROSSCLAIMS AND AMENDED THIRD-PARTY CLAIMS

15.    The central disputes in this litigation are over the ownership of rights in the musical composition and sound recording of "ECX" as well as the sampling of such work in the band Migos's song "Narcos."

16.    Kreyol Music and Melodie Makers JW own the publishing rights in the musical composition in "ECX" and own the master recording of the album *Viva les Difficiles* containing the musical composition "ECX," and its accompanying sound recording rights, from which Migos sampled "ECX" in their song "Narcos."

17.    In 2018, Kreyol Music, via its owner Jeff Wainwright, filed and recorded its sole and exclusive rights in the master recording *Viva les Difficiles* under the Copyright Law of Haiti. Attached as Exhibit A hereto is a copy of such official filing and an English translation thereof. Such rights were notarized before a notary public and witnessed.  The documentation was filed and registered with Haiti's D.G.I. (Direction Generale Des Impots), a government agency, and fee paid.  Mr. Wainwright received a receipt of payment for such filing from the notary.

18.     Defendant Idaly has no publishing or sound recording rights in "ECX."  In entering the Joint Ownership and Administration Agreement with Idaly with respect to the administration of the rights in "ECX" relating to Migos's sampling of "ECX" in their song "Narcos," Kreyol Music and Melodie Makers JW agreed solely to resolve any potential disputes regarding the ownership of rights in the work as of that time and Kreyol Music and Melodie Makers JW did not object to Idaly receiving royalties at that time.  Given that Idaly has since abdicated its rights in "ECX," Kreyol Music and Melodie Makers JW request that this Court determine that the Master Use and Publishing Use Agreements between Idaly and the Universal Music Parties are void, and that Kreyol Music and Melodie Makers JW are the sole owners of the publishing and sound recording rights in "ECX."

19.     Third-party Defendant Robert Martino was on notice of Kreyol Music's Publishing and Melodie Makers JW's publishing and sound recording rights in "ECX" for years due to his business and contractual relationships with Kreyol Music.  At no time prior to the actions which Martino and Plaintiffs took leading to and in connection with this lawsuit did Martino or Plaintiffs notify Kreyol Music and Melodie Makers JW that they were not the rightful owners of the publishing and sound recording rights in "ECX."

20.     In addition to the fact that Kreyol Music and Melodie Makers JW are the owners of publishing and sound recording rights in "ECX," if Martino had any publishing and sound recording rights in "ECX,," the statute of limitations has passed, he waived those rights by not asserting them for decades, and he is estopped from challenging the current publishing and sound recording rights of Kreyol Music and Melodie Makers JW in "ECX."  At the time Martino purported to transfer certain publishing and recording rights in "ECX" to the Plaintiffs, he did not have those rights to convey, and as a result Plaintiffs do not have certain publishing and

sound recording rights in "ECX" that they asserted in this action and Plaintiffs have no standing to bring any of the claims in this action.

7.    Upon information and belief, in 2022, Robert Martino in concert with the Plaintiffs issued a remastering of the sound recording of the album *Viva les Difficiles* containing "ECX" under the same album title *Viva les Difficiles* ("Remastered and Martino Infringing Album"), and the album cover for such Remastered and Infringing Martino Album also substantially copied the identical title of album and extremely distinctive font of the album's name as well as photographs featured on *Viva les Difficiles* to make it look confusingly similar to the original *Viva les Difficiles* album owned by Kreyol Music and Melodie Makers JW. Upon information and belief, the sound recording of "ECX" on such Remastered and Infringing Album is an unauthorized copy of "ECX" from *Viva les Difficiles* for which the publishing and sound recording rights are owned by Kreyol Music and Melodie Makers JW. Upon information and belief, Martino and Plaintiffs collaborated together to produce and sell the Remastered and Infringing Martino Album. Martino and Plaintiffs' conduct with respect to the issuance of such Remastered and Infringing Martino Album constitutes copyright infringement of Kreyol Music and Melodie Makers JW's publishing and sound recording rights in *Viva les Difficiles* and "ECX."

## JURISDICTION AND VENUE

8.    Kreyol Music and Melodie Makers continue to maintain that this Court does not have personal jurisdiction over them and that this Court is not the proper venue for these claims because there are no witnesses to the central issue of ownership of rights in the music composition "ECX" in this jurisdiction, contrary to the Court's decision otherwise, and Kreyol

Music and Melodie Makers reserve their rights with respect thereto and specifically reserves the right to ask this Court to transfer this action to Florida. Kreyol Music and Melodie Makers assert these claims as a defense to Plaintiffs' and the Universal Music Parties' Crossclaims against them.

9.      The Plaintiffs have admitted that this Court has subject matter jurisdiction over the claims against Kreyol Music and Melodie Makers JW, and thus this Court also has subject matter jurisdiction over the related claims asserted by Kreyol Music and Melodie Makers JW.

10.      Robert Martino is a necessary party to all of the other parties' request for this Court to determine the ownership of publishing and sound recording rights in the musical composition "ECX" as a result of the fact that Martino as claimed author or composer of the work purported to convey sound recording rights in the works *Viva les Difficiles* and "ECX" to the Plaintiffs (which rights Kreyol Music and Melodie Makers JW contend Martino did not have) and the Plaintiffs have sought determination of the ownership of rights, including publishing and sound recording rights, in the work "ECX" as the basis of their copyright infringement sampling claim against the Universal Music Parties. In authorizing Plaintiffs to act as his agent for his rights in "ECX," Martino has consented to personal jurisdiction before this Court. In addition, Martino and Plaintiffs acted in concert to release and sell throughout the United States, including New York, through various music sale platforms the Remastered and Infringing Martino Album which wholesale copies, upon information and belief, the entirety of the original, master sound recording *Viva les Difficiles,* including the work "ECX," owned solely and exclusively by Kreyol Music and Melodie Makers JW, the ownership rights for which were registered by Jeff Wainwright in 2018 under Haiti copyright law.

## PARTIES

11.     Kreyol Music and Melodie Makers JW are Florida companies with their principal place of business in Florida.

12.     UMG Recordings, Inc., is a Delaware corporation with corporate headquarters in California.

13.     Universal Music Corporation is a Delaware corporation with corporate headquarters in California.

14.      Universal Music Group, Inc., is a Delaware corporation with corporate headquarters in California.

15.     Quality Control is a Georgia limited liability company with offices in Georgia.16. Keep on Kicking Music, Inc. and Keep on Moving Music, Inc. are Delaware corporations, which allege they are based in Florida.

16.     Upon information and belief, Free World Music, Limited is a British corporation with offices in Florida.

17.     Upon information and belief, Idaly is a Florida corporation with an office in New Jersey.

18.     Third party Defendant Robert Martino is a resident of Florida who purports to have assigned rights in the musical composition and sound recording "ECX" to Keep on Kicking Music, Keep on Moving Music and Free World Music.

**FACTS COMMON TO KREYOL MUSIC AND MELODIE MAKERS'S
COUNTERCLAIMS, CROSSCLAIMS AND
<u>FIRST AMENDED THIRD-PARTY CLAIMS</u>**

***Defendants Kreyol Music and Melodie Makers are Florida Corporations that Operate in the
State of Florida***

19. In 1999, Kreyol Music, Inc. was incorporated in the State of Florida. Its principal

place of business is in Florida. It is a recording label that specializes in the production,

publishing, promotion and distribution of artists and music originated mostly from Haiti and the

French Antilles. Since its creation, Kreyol Music has recorded, produced and released numerous

albums of different groups and artists.

20. In 1988, Melodie Makers I was formed in the State of Florida by three equal

partners, one of them being Jeff Wainwright. Its principal place of business was in Florida. It

signed and produced artists and groups, and manufactured and distributed their compact

discs. By the summer of 1995, the three partners had a disagreement, and the company became

inactive.

21. In 2010, Jeff Wainwright acquired the corporate name Melodie Makers and

formed a company referred to herein as Melodie Makers JW which continues to be a corporation

formed under Florida law.

22. Melodie Makers JW is the record label and Kreyol Music is the music publisher

for the *Viva les Difficiles* album containing the composition "ECX" that is the subject of this

action.

***Creation of Composition of "ECX"***

23. In the mid-1960s in Haiti, a neighborhood band *Les Difficiles de Petion Ville*

created and played Haitian-influenced music. Henry Celestin was the principal owner and leader

of the band. Mr. Celestin is a Haitian citizen and continues to reside in Haiti.

24.     One of the guitarists for the band was Robert Martino who then resided in Haiti. Mr. Martino claims to have been an author of the musical composition "ECX." Upon information and belief, Mr. Martino created the musical composition "ECX" during the time he was a member of the band Les Difficiles de Petion Ville.  Mr. Martino had a falling out with the band, and in 1970 he left the band and went on to play with a series of other bands.  Another guitarist replaced Mr. Martino in the band Les Difficiles de Petion Ville.

25.     The music of the band Les Difficiles de Petion Ville was primarily recorded in the 1960s on 8 track tapes in Haiti as was other Haitian music during that time period.

26.     As it is customary in the Haitian music industry, all of the publishing and sound recording rights were usually sold by the band to the record label who purchased them for a lump sum, and/or the record label paid for all of the expenses for the production of the sound recording, by doing so, the record label acquired all of the publishing and sound recording rights and the master sound recordings.

27.     At some point in time in 1976, Mr. Celestin retired, and the band Les Difficiles de Petion Ville ceased performing, and Mr. Celestin prohibited anyone from using the band's name.

***Cine Disc Creates New Sound Recording* Viva Les Difficiles**

28.     Yvon Cine was the owner of Cine Disc a record label based in Haiti that was very active in the late seventies and for most of the eighties.  Mr. Cine noticed that there was still a select fan base for the music of Les Difficiles de Petion Ville.

29.     After Mr. Cine noticed the success of a Live Reunion performance held by the former member of Les Difficiles, Mr. Cine came up with the idea of gathering most of the original musicians of the group Les Difficiles de Petion Ville right after that performance to do a

remake of some of their previously unreleased hits.  The album produced by Cine Disc was called *Viva les Difficiles*, and the new recording benefited from advances from a 24-track recording studio in Port Au Prince, Haiti called Audiotek.  Henry Celestin came out of retirement to participate in the creation of the album.  According to Mr. Martino, the sound recording of the album *Viva les Difficiles* was created on a single day.

30.     The original vinyl album cover of the album *Viva les Difficiles* identifies Cine Disc as the music label, producer and distributor of the album with Yvon Cine credited as Executive Producer.  Cine Disc paid for the production of the album. The center label on the original vinyl record identifies Cine Disc as the producer.  For purposes of distribution, Cine Disc is identified with its address and phone number.  Cine Disc acquired its ownership of the master sound recording for *Viva les Difficiles* including the work "ECX" consistent with the custom and practices in the Haitian music industry in the late 1970s and 1980s.  No other music label, producer or distributor is identified on the album or its cover.

31.     The composition "ECX" was included on *Viva les Difficiles.*

32.     At the time of the sound recording of the album *Viva les Difficiles* was created, Mr. Martino was the part owner and band leader of the group Scorpio.

33.     Mr. Martino's participated in the sound recording of the album *Viva les Difficiles* at the request of Mr. Celestin by playing guitar for the works on the album.

34.     The master sound recording of the album *Viva les Difficiles* was produced, recorded, and first released in Haiti by Cine Disc.

35.     Upon information and belief, Mr. Martino has no publishing or sound recording rights in the master sound recording of *Viva les Difficiles.*

36.     Mr. Cine is now deceased. He passed away in February 2020.

37.     Mr. Martino never challenged Cine Disc's ownership of the composition, publishing and sound recording rights of "ECX" during the time that Cine Disc published and distributed the *Viva les Difficiles* album in Haiti.  Mr. Martino has admitted that he only met Cine once at the studio during the recording and thereafter he never communicated with Mr. Cine. Mr. Martino never claimed that he owned any rights in "ECX."

### *In 1994, Melodie Makers I Licensed the Manufacturing and Distribution Rights for* Viva les Difficiles

38.     In 1994, Mr. Cine approached Melodie Makers I about licensing rights to distribute *Viva les Difficiles*.

39.     At this time, Mr. Wainwright was Chief Financial Officer of Melodie Makers I.

40.     Mr. Cine on behalf of Cine Disc signed a written license agreement with Melodie Makers I in the presence of Jeff Wainwright and the other two partners of Melodie Makers I granting it exclusive manufacturing and distribution rights.  At the same time, Cine Disc also licensed exclusive manufacturing and distribution rights for another album to Melodie Makers I. This meeting was held at the Melodie Makers Volume I store.  During this meeting, Mr. Cine represented to Jeff Wainwright and his partners in Melodie Makers I that Cine Disc owned all of the rights to the sound recording for the album *Viva les Difficiles*.

41.     In connection with such license, Mr. Cine provided the original, physical master sound recording of *Viva les Difficiles* to Melodie Makers I to create CDs.  Mr. Cine was present during the transferring of the master sound recording of *Viva les Difficiles* to dat tape for use by Melodie Makers I to create CDs, and Mr. Cine took with him the original master sound recording when he departed to Haiti.

42.      Melodie Makers I's primary business in 1994 was selling music CDs.  Pursuant to the Cine Disc license to Melodie Makers I, Mr. Wainwright created new CD packaging for the

*Viva les Difficiles* album.  Mr. Wainwright arranged for manufacturing of the CDs of the album *Viva les Difficiles*.

43.     Below is a copy of the CD album cover for *Viva les Difficiles*:





44. The back of the CD cover specifically states that the CD was being distributed "Under License from CINE DISC."

45.  As a result of a dispute among the partners of Melodie Makers I, the business ceased active operations in the summer of 1995, and, upon information and belief, Harold Staco, its President, arranged for the liquidation of the inventory of its entire CD inventory including Viva les Difficiles.  To the best of Mr. Wainwright's knowledge, Melodie Makers I did not manufacture any additional CDs after the dispute erupted among the partners.

46. During the time period that Melodie Makers I manufactured and distributed *Viva les Difficiles*, Mr. Martino never provided a license of any kind to Melodie Makers I, nor did he request recognition of any rights or payment of any kind.  During the time period that Melodie Makers I manufactured and distributed Viva *les Difficiles*, including the composition "ECX"

under license from Cine Disc, Mr. Martino never challenged Melodie Makers I's publishing and sound recording rights of "ECX" and Mr. Martino never claimed that he owned any rights in the sound recording of "ECX."

***Cine Disc Sold All Rights to the Album* Viva les Difficiles *to Jeff Wainwright***

47. Mr. Cine stopped producing music and went on to other business endeavors.

48. After Mr. Wainwright departed Melodie Makers I, in October 1995, he was involved in establishing Antilles Mizik, Inc. a company formed in the State of Florida. In the first two years of its operations, Antilles Mizik produced more than 30 new albums.

49. Mr. Cine approached Jeff Wainwright about engaging in business with him including selling all rights to the album *Viva les Difficiles* and licensing two other compilation albums for other groups. On December 8, 1995, Mr. Wainwright and Mr. Cine negotiated and finalized by written agreement Mr. Wainright's purchase of all rights in the album *Viva les Difficiles*. In the written agreement, Mr. Cine certified that he owned all rights in the musical works on the album *Viva les Difficiles*. These negotiations took place in Miami, Florida. At this time, Mr. Cine again represented that he had all rights to the master sound recording and he turned over the original, physical master sound recording tape to Mr. Wainwright.

50. Mr. Wainwright granted an implied license to Antilles Mizik to manufacture and to distribute the album *Viva les Difficiles*. Mr. Wainwright arranged for the transfer of the *Viva les Difficiles* sound recording onto dat tape to manufacture CDs of the album. Antilles Mizik sold CDs of the album *Viva les Difficiles* although its sales were minimal.

***Kreyol Music Distributed the Album* Viva les Difficiles *Online***

51. In or about 1999, Mr. Wainwright formed Kreyol Music and registered Kreyol Music with the music rights organization BMI. In or about 2011, Kreyol Music began distributing

online the album *Viva les Difficiles* and its work "ECX."  In March 2011, Kreyol Music

registered the album with BMI, identifying Mr. Martino as the composer of individual songs and

Kreyol Music as the sole publisher for purposes of BMI paying respective royalties to Mr.

Martino and Kreyol Music for their shares.

52. Mr. Martino was often in Kreyol Music's offices in Florida where it openly displayed

all of its albums including *Viva les Difficiles* containing the work "ECX," and he never

challenged Kreyol Music and Melodie Makers's publishing and master sound recording rights.

"ECX."

***Since 2000, Kreyol Music and Mr. Martino Have Had Extensive Business Dealings***

53. Since 2000, Mr. Martino has worked on several studio projects with the Kreyol Music

record label as a hired musician mostly recording guitar tracks.  From the end of 2007 until 2012,

Mr. Martino also was hired as the maestro and lead guitar of the musical group of one of Kreyol

Music's recording artist Misty Jean. He played in numerous events for the band and was paid by

check.

54. In addition, in 2007, Kreyol Music entered a written agreement with Mr. Martino and

purchased his second solo album entitled *Oye Chica* and other matters (the "2007 Kreyol

Music/Martino Agreement").  Kreyol Music purchased all the rights for this album from Mr.

Martino for a lump sum cash payment, including the publishing and sound recording rights.

55. Such 2007 Kreyol Music/Martino Agreement was entered between Kreyol Music and

Mr. Martino in 2007 regarding (i) the album *Oye Chica*, (ii) an option for another album, as well

as (iii) Mr. Martino's obligation "[to] bring to the Label's attention each and every inquiry,

proposal or offer it receives relating to Artist's involvement in the music and recording industry."

See 2007 Kreyol Music/Martino Agreement, Paragraphs 1.e, 2.e. and 7.b.  For the monetary

consideration provided by Kreyol Music, Mr. Martino gave Kreyol Music a right of first refusal with respect to any of his involvement in the music and recording industry.  Under the 2007 Kreyol Music/Martino Agreement, Mr. Martino was obligated to bring "each and every inquiry, proposal or offer it receives relating to the Artist's involvement in the music and recording industry." Under such agreement, Mr. Martino was required to bring to Kreyol Music all music and recording matters relating to "ECX."  Mr. Martino has claimed, in a declaration submitted in this action, that he assigned to Free World Music "all right, title, and interest in and to the Master Recording of "ECX." Besides the fact that he could not do so because the master sound recording of "ECX" is owned by Kreyol Music and Melodie Makers, and Mr. Martino had no rights in the sound recording, Mr. Martino was obligated under the 2007 Kreyol Music/Martino Agreement to bring any matters regarding his involvement in the music industry to Kreyol Music.

56. During discovery in this case, Kreyol Music learned for the first time that during 2007 and/or 2008 that Mr. Martino may have collaborated with Wyclef Jean on a musical work titled "Let Me Touch Your Button," which sampled the master sound recording of "ECX" on *Viva les Difficiles* in contravention of Kreyol Music's rights in the master sound recording.  In addition, as required under the 2007 Kreyol Music/Martino Agreement, Mr. Martino did not bring such music industry opportunity to Kreyol Music's attention.

57. In addition, in or about 2012, Mr. Martino asked Mr. Wainwright to distribute online certain of his older albums which Mr. Wainwright agreed to do.  Kreyol Music distributed Mr. Martino's albums online for more than ten years.   Kreyol Music has paid Mr. Martino royalties for the distribution of these works; he was paid twice annually for such works by direct deposit into his bank located in the State of Florida, and he has been sent by email Royalty statements relating to such payments.

58. As of the date this lawsuit was commenced and thereafter, Kreyol Music was continuing to distribute Mr. Martino's older albums online, to issue royalty statements to Mr. Martino and to pay royalties to Mr. Martino pursuant to their agreement.

***Kreyol Music Promptly Pursued in Rights in the Master Sound Recording of* Viva les Difficiles**

59. In 2018, the group Migos released the composition "Narcos" on the third track of their *Culture III* album.  The composition "Narcos*"* contained a sampling of "ECX."

60. On February 8, 2018, Mr. Martino alerted Mr. Wainwright about a sampling of the composition "ECX" by the band Migos in their musical work "Narcos."  At this time, Mr. Martino knew that Mr. Wainwright owned the rights to the master sound recording *Viva les Difficiles*, including the work "ECX," and that Kreyol Music was distributing *Viva les Difficiles* online.  Shortly thereafter, Mr. Wainwright and Mr. Martino met in Haiti, and Mr. Wainwright told Mr. Martino that he was consulting with a lawyer about asserting his rights in the master sound recording of "ECX" with respect to the unauthorized sampling by Migos in their work "Narcos."  During Mr. Wainwright's meeting with Mr. Martino and his concurrent communications, Mr. Martino never indicated that he had any master sound recording rights in "ECX" or any of the other songs on *Viva les Difficiles*, nor did Mr. Martino raise any objection during this time period to Mr. Wainright pursuing his rights in such works.

61. On July 2, 2018, Kreyol Music, via its counsel Daniel Rubin, Esq. of Sample Clearance, contacted Universal Music to assert Kreyol Music's rights in the master sound recording of *Viva les Difficiles* and the work "ECX" thereon with respect to Migos's musical composition "Narcos" that sampled "ECX" from the *Viva les Difficiles* sound recording.

62. In November 2018, Jeff Wainwright sought to protect all of his rights to the master sound recording *Viva les Difficiles* under Article 10 of the Haiti Decree of 1968 on the rights of authors, literary works, scientifics and artistics.  Jeff Wainwright appeared before a notary in Haiti and presented the original, physical master sound recording of *Viva les Difficiles*, a copy of the *Viva les Difficiles* CD and a copy of his purchase agreement.  The notary prepared the documentation and arranged for the filing and registration of such documentation and payment of fees to the Haiti D.G.I. (Direction Generale Des Impots), a government agency.

***Mr. Martino Claimed Rights Solely as Author and Composer in "ECX"***

63. In 2000, more than three decades after the creation of "ECX," Mr. Martino, having never asserted any rights to the composition "ECX" at any time previously, sought to register "ECX" in France at Societe des Auteurs, Compositeurs et Editeurs de Musique ("SACEM").  In his application with SACEM, Mr. Martino claimed to be author and composer.  In the application, Mr. Martino references the master sound recording owned by Melodie Makers specifically identifying the catalog number MMICD1037, which is the catalog number assigned by Melodie Makers, Inc. in 1994 (i.e., "MMI" being the reference to Melodie Makers, Inc.).

64. In the SACEM application, Mr. Martino did <u>not </u>identify himself as the owner of the publishing rights in his registration in the "Editeur" fields.  The "Editeur" fields were left blank.  Obviously, Mr. Martino was not claiming any publishing or sound recording rights in "ECX."

65. Upon information and belief, and as alleged in the Plaintiffs' Amended Complaint ¶ 20, Mr. Martino appears to have attempted to assign rights that he did not have to the Plaintiffs in this action Keep on Kicking Music, Inc., Keep on Moving Music, Inc. and Free World Music Limited.

66. Mr. Martino, pursuant to an agreement dated January 1, 2021 with Plaintiff Free World Music Limited, purported to transfer master recordings rights including those in *Viva les Difficiles,* however, Mr. Martino did not own of control the physical materials and/or copyright in master sound recording of *Viva les Difficiles*. Mr. Martino has never had a copy of the original, physical master sound recording in his possession. This agreement appears to have been backdated because, upon information and belief, Mr. Martino did not first meet with Marc-Antoine Chetata of Plaintiffs until July 2021.

67. In a publishing agreement dated July 1, 2021 between Mr. Martino and Plaintiff Keep on Kicking ("KOK Publishing Agreement"), Mr. Martino purported to assign the copyright in his entire catalog of musical compositions to Keep on Kicking, including all of the songs on *Viva les Difficiles*, several of the songs on *Oye Chica*, and "Let Me Touch Your Button." Among other things, Mr. Martino had already granted Kreyol Music the sole and exclusive publishing rights to *Oye Chica* in the songs, melodies and music on such album. Mr. Martino's entry into such KOK Publishing Agreement with Keep on Kicking constitutes a breach of the 2007 Kreyol Music/Martino Agreement with respect to the songs on the *Oye Chica* album wherein Mr. Martino had granted Kreyol Music all of the publishing rights in *Oye Chica*.

68. In 2021, Plaintiff Keep on Kicking Music, Inc. received a U.S. Copyright registration in PA0002321270 / 2021-11-10 for *"ECX"* based on its representation that the date of publication was July 1, 1978 (appearing to refer to the date the *Viva les Difficiles* album was recorded by Cine Disc. The registration was only for <u>authorship</u> of "ECX" and not the sound recording rights Amended Complaint, Ex. 2. The registration information identified France as the nation of first publication, but upon information and belief, this was incorrect as Haiti was the place of first publication.

69.    Shortly before this lawsuit was commenced, in January 2023, Plaintiffs filed a second copyright registration for the sound recording of "ECX."  Amended Complaint, Ex. 3. This registration identified Haiti and France as the places of first publication.  Prior to this time, Mr. Martino had not claimed any rights in the sound recording of "ECX" which had been published for many years first by Cine Disc and later by Kreyol Music and Melodie Makers JWwhich acquired from Cine Disc both the publishing and sound recording rights in the master recording of *Viva les Difficiles* containing the work "ECX."

70.    Upon information and belief, in 2022, Robert Martino in concert with the Plaintiffs issued a remastering of the sound recording of the album *Viva les Difficiles* containing "ECX" under the same album title *Viva les Difficiles* (the "Remastered and Infringing Martino Album").  Upon information and belief, the Remastered and Infringing Martino Album has been sold since 2022, and it is currently for sale on Spotify, Apple Music and Amazon and other music platforms in violation of Kreyol Music and Melodie Makers JW's rights.

71.    The album cover for such Remastered and Infringing Martino Album also substantially copied the identical title of album, the extremely distinctive font of the album's name as well as the photographs featured on *Viva les Difficiles* to make the remastered album look confusingly similar to the original *Viva les Difficiles* album owned by Kreyol Music and Melodie Makers JW which copyrighted elements were protected under the copyright registration obtained in Haiti for the album.

72.    Upon information and belief, the sound recording of "ECX" on such Remastered and Infringing Martino Album is an unauthorized copy of "ECX" from *Viva les Difficiles* for which the publishing and sound recording rights are owned by Kreyol Music and Melodie Makers

JW.  Upon information and belief, Martino and Plaintiffs collaborated together to produce and sell the Remastered and Infringing Album.

73.    Martino and Plaintiffs' conduct with respect to the release, sale and exploitation of the Remastered and Infringing Martino Album constitutes copyright infringement of Kreyol Music and Melodie Makers JW's publishing and sound recording rights in *Viva les Difficiles* and "ECX."  Martino's conduct with respect to the production and release of the Remastered and Infringing Martino Album also breached the 2007 Kreyol Music/Martino Agreement.



74.     Mr. Martino and/or Plaintiffs released the album *The Legend Is Back*.  Such release and sales of such album also breached Kreyol Music's rights of first refusal clause under the 2007 Kreyol Music/Martino Agreement.

75.     Idaly has now rescinded its claims, and abdicated any claims, to the publishing and sound recording rights in "ECX."  Plaintiffs' Am. Complaint ¶ 40 & Ex. 10 thereto.

## COUNT I

## <u>DECLARATORY JUDGMENT AGAINST MARTINO, PLAINTIFFS, UNIVERSAL MUSIC PARTIES AND IDALY</u>

76.     The preceding paragraphs of Kreyol Music and Melodie Makers JW's claims are realleged and incorporated herein by reference as if fully set forth herein.

77.     As a result of the allegations stated in Plaintiffs' Amended Answer, the Universal Music Parties' Crossclaims, and the allegations described in the foregoing paragraphs of Kreyol Music and Melodie Maker JW's claims, an actual controversy exists, and declaratory judgment is necessary and appropriate on the issues set forth in this Count.

78.

Kreyol Music and Melodie Makers JW seek declaratory judgment as follows:

   a.   Kreyol Music and Melodie Makers JW are the sole owners of the publishing
        rights and sound recording rights in the master sound recording of *Viva les
        Difficiles*, including "ECX," which rights were registered in Haiti under Article 10
        of the Haiti Decree of 1968 on the rights of authors, literary works, scientifics and
        artistics.

b.   Migos illegally used and sampled "ECX" in their song "Narcos" and infringed
     Kreyol Music and Melodie Makers JW's publishing and sound recording rights in
     "ECX."

c.   The sampling of *"ECX"* by Migos in their song "Narcos" constitutes an
     infringement of Kreyol Music's publishing rights in the musical composition
     "ECX," and the Universal Music Parties are required to pay Kreyol Music and
     Melodie Makers JW royalties for such unauthorized use as a result of Kreyol
     Music's publishing and Melodie Makers JW'ssound recording rights.

d.   The sampling of "ECX" by Migos in their song "Narcos" constitutes an
     infringement of Melodie Makers's sound recording rights in the musical
     composition "ECX" on the master sound recording of *Viva les Difficiles* owned by
     Kreyol Music and Melodie Makers JW, and the Universal Music Parties are
     required to pay Kreyol Music and Melodie Makers JW royalties for such
     unauthorized use.

e.   Idaly has no publishing or sound recording rights in "ECX," and to the extent it
     had any such rights at any time, it has now abdicated those rights.

f.   To the extent that Idaly had no rights publishing or sound recording rights in
     "ECX" and has now abdicated such rights, the Master Use Agreement and
     Publishing Use Agreement (referenced in the Plaintiffs' Amended Complaint)
     shall be determined to be null and void, and Idaly is no longer entitled to
     distributions thereunder with respect to Migos sampling of "ECX" in their work
     "Narcos."

g.  Martino has no publishing rights in the musical composition "ECX" used by Migos in their sampling of "ECX" in their song "Narcos."

h.  Martino has no sound recording rights in the master recording of "ECX" used by Migos in their sampling of "ECX" in their song "Narcos."

i.  Plaintiffs have no publishing rights in the musical composition of "ECX."

j.  Martino's time to assert a claim of ownership and/or copyright infringement against Kreyol Music and/or Melodie Makers JW in connection with *Viva Les Difficiles* and "ECX" expired prior to the filing of this lawsuit.  As purported assignee of Martino's rights, Plaintiffs are similarly time barred.


k.  Plaintiffs have no sound recording rights in the master recording of "ECX" used by Migos in their sampling of "ECX" in their song "Narcos."

l.  Martino and Plaintiffs' unauthorized use of the master sound recording of *Viva les Difficiles* in the Remastered and Infringing Martino Album constitutes (a) copyright infringement of Kreyol Music and Melodie Makers JW's publishing and sound recording rights and the infringement of the copyright protected album cover, and (b) breach of the 2007 Kreyol Music/Martino Agreement.

m.  Martino's release, sale and exploitation of the album *The Legend is Back* constitutes a breach of the 2007 Kreyol Music/Martino Agreement because (a) Martino agreed that Kreyol Music was its sole representative in the music industry and provided Kreyol Music a right of first refusal for matters relating to the music and recording industry, and (b) Kreyol Music purchased publishing and sound recording rights for the works "Oye Chica" and "Ti DWET" which songs

were included on such album without authorization and without compensation to Kreyol Music.

## COUNT II

### COPYRIGHT INFRINGEMENT AGAINST THE UNIVERSAL MUSIC PARTIES FOR THE UNAUTHORIZED SAMPLING OF "ECX" IN MIGOS'S SONG "NARCOS"

79.    The preceding paragraphs of Kreyol Music and Melodie Makers JW's claims are realleged and incorporated herein by reference as if fully set forth herein.

80.    Melodie Makers JW is the record label and Kreyol Music is the music publisher for the *Viva les Difficiles* album containing the composition "ECX" that is the subject of this action.

81.    Kreyol Music and Melodie Makers JW are the current rightful owners of the publishing and sound recording rights in the musical composition *"ECX"* and the owner of the sound recording of *"ECX"* contained on the album *Viva les Difficiles*.

82.    Jeff Wainright purchased all of the rights in the master sound recording from its original owner and Executive Producer Yvon Cine of Cine Disc in 1995. Mr. Cine certified that he owned all right in the master sound recording.  Cine Disc developed the album concept for *Viva les Difficiles*, and was the producer, manufacturer and distributor of the *Viva les Difficiles* album, with Yvon Cine serving as the album's Executive Producer.  Cine Disc paid for the production of the album.  It maintained physical possession of the original master sound recording until it transferred such possession to Mr. Wainwright pursuant to a sale of all rights to Mr. Wainwright.  Cine Disc acquired the rights to the master sound recording of *Viva les Difficiles* consistent with the custom and practice in the Haitian music industry in the late 1970s and 1980s.

83.    In 2018, Kreyol Music, via its owner Jeff Wainwright, filed, recorded and registered its sole and exclusive rights in the master sound recording for the album *Viva les Difficiles,* including "ECX," under Article 10 of the Haiti Decree of 1968 on the rights of authors, literary works, scientifics and artistics.  See Exhibit A hereto.  The registration was filed with the Haiti's D.G.I. (Direction Generale Des Impots), a government agency and represents proof of ownership.

84.    In their song "Narcos," the band Migos willfully sampled Kreyol Music's master sound recording of "ECX," which is solely and exclusively owned by Kreyol Music and the copyright for which is protected under the laws of Haiti.

85.    Haiti is a treaty party under the Berne Convention, and Kreyol Music and Melodie Makers are entitled to enforce their ownership rights in this Court registered pursuant to their registration under Article 10 of the Haiti Decree of 1968 on the rights of authors, literary works, scientifics and artistics.

86.    Migos and the Universal Music Parties Defendants' unauthorized reproduction, distribution, public performance, display, and creation of "Narcos" infringes on Kreyol Music and Melodie Makers's exclusive rights in "ECX" in violation of the Haiti Copyright Laws, and/or the U.S Copyright Act, 17 U.S.C. §§ 101, et seq.

87.     The infringing work "Narcos" copies quantitatively and qualitatively the most distinct, important, recognizable, and significant portions of "ECX" and certainly, the song "Narcos" could not exist without the infringing portions of "ECX."

88.     From the date of the creation of the infringing work "Narcos," Migos and the Universal Music Parties have infringed on Kreyol Music and Melodie Maker's copyright interest in the sound recording of "ECX."

89.     For a period of time, the Universal Music Parties recognized Kreyol Music and Melodie Makers' publishing and sound recording rights in "ECX" and paid Kreyol Music and Melodie Makers a portion of royalties with respect to their rights, however, the Universal Music Parties ceased such payments of royalties.

90.     Despite ceasing such payments, the Migos and Universal Music Parties infringement continues as the song "Narcos" continues to be sold and/or to the extent the Infringing Work "Narcos" continues to be licensed for sale, downloads, streams, and/or other exploitations by Migos, the Universal Music Parties, and/or their agents.

91.     By this claim, Kreyol Music seeks full payment for its sole and exclusive publishing and sound recording rights in the master sound recording of "ECX" since the date that the Universal Music Parties ceased paying royalties as well as any other monies owing to them.

92.     At all relevant times since payment of royalties to Kreyol Music and Melodie Makers has ceased, Defendants' conduct has been and continues to be knowing, willful, and with complete disregard of their rights.

93. As a direct and proximate result of Migos and the Universal Music Parties' willful conduct, Kreyol Music and Melodie Makers have suffered actual damages, including lost profits, lost opportunities, and loss of goodwill.

94.     Pursuant to 17 U.S.C. § 504(b), Kreyol Music and Melodie Makers are entitled to actual damages, including disgorgement of Migos and the Universal Music Parties' profits attributable to the infringement, as will be proven at trial. Migos and the Universal Music Parties'

conduct is causing and, unless enjoined by this Court, will continue to cause Kreyol Music and

Melodie Makers irreparable injury that cannot be fully compensated or measured in monetary

terms. They have no adequate remedy at law, and pursuant to 17 U.S.C. § 502, Kreyol Music and

Melodie Makers are entitled to a preliminary and permanent injunction prohibiting the

reproduction, distribution, sale, public performance, or other use or exploitation of the infringing

work "Narcos."

## COUNT III

### DECLARATORY JUDGMENT AGAINST MARTINO AND PLAINTIFF
### TO CANCEL THEIR INVALID U.S. COPYRIGHT REGISTRATION
### IN THE SOUND RECORDING OF "ECX"

95. The preceding paragraphs of Kreyol Music and Melodie Makers's claims are

realleged and incorporated herein by reference as if fully set forth herein.

96. Melodie Makers is the record label and Kreyol Music is the music publisher for the

*Viva les Difficiles* album containing the composition "ECX" that is the subject of this action.

97. Kreyol Music and Melodie Makers are the rightful owners of the publishing and sound

recording rights in the musical composition "ECX" and the owner of the sound recording of

"ECX" contained on the album *Viva les Difficiles* purchased from its original owner and

Executive Producer Yvon Cine of Cine Disc in 1995.

98.    Jeff Wainright purchased all of the rights in the master sound recording from its

original owner and Executive Producer Yvon Cine of Cine Disc in 1995.  Mr. Cine certified that

he owned all rights in the master sound recording.  Cine Disc developed the concept for the Viva

les Difficiles album, and was the producer, manufacturer and distributor of the *Viva les Difficiles*

album, with Yvon Cine serving as the album's Executive Producer.  Cine Disc paid for the

production of the album.  It maintained physical possession of the original master sound recording until it transferred such possession pursuant to a sale of all rights to Mr. Wainwright. Cine Disc acquired the rights to the master sound recording of *Viva les Difficiles* consistent with the custom and practice in the Haitian music industry in the late 1970s and 1980s.

99.    In 2018, Kreyol Music, via its owner Jeff Wainwright, filed, recorded and registered its sole and exclusive rights in the master sound recording for the album *Viva les Difficiles,* including "ECX," under Article 10 of the Haiti Decree of 1968 on the rights of authors, literary works, scientifics and artistics.  See Exhibit A hereto.  The registration was filed with the Haiti's D.G.I. (Direction Generale Des Impots).

100. Kreyol Music and Melodie Makers JW seek a declaration that Martino and Plaintiffs do not own the sound recording rights to "ECX" and an order, pursuant to 37 CFR § 201.7 and Copyright Office Compendium Chapter 18 and Section 1807.4(e), that this Court  direct Mr. Martino, as claimed author, and Plaintiff Free World Music, Ltd., as claimed owner, to cancel before the U.S. Copyright Office the Copyright Reg. No. SRO 412-913 filed on February 16, 2023 (after this lawsuit was commenced).


### COUNT IV


### COPYRIGHT INFRINGEMENT AGAINST MARTINO AND PLAINTIFFS FOR UNAUTHORIZED USE OF THE MASTER SOUND RECORDING OF *VIVA LES DIFFICILES* (CONTAINING "ECX" AND OTHER WORKS)

101. The preceding paragraphs of Kreyol Music and Melodie Makers JW's claims are realleged and incorporated herein by reference as if fully set forth herein.

102.    Melodie Makers JW is the record label and Kreyol Music is the music publisher for the *Viva les Difficiles* album containing the composition "ECX" that is the subject of this action.

103.    Kreyol Music and Melodie Makers JW are the rightful owners of the publishing and sound recording rights in album *Viva les Difficiles*.

104.    Jeff Wainright purchased all of the rights in the master sound recording from its original owner and Executive Producer Yvon Cine of Cine Disc in 1995, and Mr. Cine certified that he owned all rights in *Viva les Difficiles*. Cine Disc developed the concept for the *Viva les Difficiles* album, and was the producer, manufacturer and distributor of the *Viva les Difficiles* album, with Yvon Cine serving as the album's Executive Producer.  Cine Disc paid for the production of the album. Cine Disc acquired the rights to the master sound recording of *Viva les Difficiles* consistent with the custom and practice in the Haitian music industry in the late 1970s and 1980s.  It maintained physical possession of the original, physical master sound recording until it transferred such possession to Mr. Wainwright pursuant to a sale of all rights to Mr. Wainwright.

105.    In 2018, Kreyol Music, via its owner Jeff Wainwright, filed, recorded and registered its sole and exclusive rights in the master sound recording for the album *Viva les Difficiles,* including "ECX," under Article 10 of the Haiti Decree of 1968 on the rights of authors, literary works, scientifics and artistics.  See Exhibit A hereto.  The registration was filed with the Haiti's D.G.I. (Direction Generale Des Impots), a government agency and represents proof of ownership.

106.    Haiti is a treaty party under the Berne Convention, and Kreyol Music and Melodie Makers are entitled to enforce their ownership rights in this Court registered pursuant to their

registration under Article 10 of the Haiti Decree of 1968 on the rights of authors, literary works, scientifics and artistics.

107.    Upon information and belief, in 2022, Robert Martino in concert with the Plaintiffs released and sold a remastering of the sound recording of the album *Viva les Difficiles* containing "ECX" under the same album title *Viva les Difficiles* herein referenced as the Remastered and Infringing Martino Album.  The Remastered and Infringing Martino Album is currently being sold on Spotify, Apple Music and Amazon as well as other music platforms in flagrant violation of Kreyol Music and Melodie Makers JW's rights.

108. The album cover for such Remastered and Infringing Martino Album also substantially copied the identical title of album, the extremely distinctive font of the album's name as well as the photographs featured on *Viva les Difficiles* to make the remastered album look confusingly similar to the original *Viva les Difficiles* album owned by Kreyol Music and Melodie Makers which copyrighted elements were protected under the copyright registration obtained in Haiti for the album.110. Upon information and belief, such Remastered and Infringing Martino Album is an unauthorized copy of the complete sound recording of *Viva les Difficiles* for which the publishing and sound recording rights are owned solely and exclusively by Kreyol Music and Melodie Makers JW.  Upon information and belief, Martino and Plaintiffs collaborated together to produce and sell the Remastered and Infringing Martino Album.

109. Martino and Plaintiffs unauthorized reproduction, distribution, public performance, display, and creation of the Remastered and Infringing Martino Album infringes on Kreyol Music and Melodie Makers JW's exclusive rights in *Viva les Difficiles* in violation of the U.S Copyright Act, 17 U.S.C. §§ 101, et seq.

110. Upon information and belief, the infringing work of Remastered and Infringing Martino Album copies in its entirety *Viva les Difficiles*, and Remastered and Infringing Martino Album could not exist without original master sound recording of *Viva les Difficiles* owned by Kreyol Music and Melodie Makers.

111. From the date of the creation of the infringing work Remastered and Infringing Martino Album, Martino and Plaintiffs have infringed on Kreyol Music and Melodie Maker JW's copyright interest in the original master sound recording of *Viva les Difficiles* owned by Kreyol Music and Melodie Makers.

113. Upon information and belief, the Remastered and Infringing Martino Album was licensed for sale, downloads, streams, and/or other exploitations by Martino, Plaintiffs and/or their agents, and its currently available for sale on Spotify, Apple Music, Amazon and other music platforms in violation of Kreyol Music and Melodie Makers JW's rights.

114. Martino's and Plaintiffs' conduct has been and continues to be knowing, willful, and with complete disregard of Kreyol Music and Melodie Maker JW's rights.

115. As a direct and proximate result of Martino's and Plaintiffs' willful conduct, Kreyol Music and Melodie Makers JW have suffered actual damages, including lost profits, lost opportunities, and loss of goodwill.

116. Pursuant to 17 U.S.C. § 504(b), Kreyol Music and Melodie Makers JW are entitled to actual damages, including disgorgement of Martino's and Plaintiffs' profits attributable to the infringement, as will be proven at trial.

117. Martino and Plaintiffs' conduct is causing and, unless enjoined by this Court, will continue to cause Kreyol Music and Melodie Makers JW irreparable injury that cannot be fully compensated or measured in monetary terms. They have no adequate remedy at law, and

pursuant to Haitian Copyright Law and/or 17 U.S.C. § 502, Kreyol Music and Melodie Makers JW are entitled to a preliminary and permanent injunction prohibiting the reproduction, distribution, sale, public performance, or other use or exploitation of the infringing work the Remastered and Infringing Martino Album.

## COUNT V

### BREACH OF 2007 KREYOL MUSIC/MARTINO AGREEMENT AGAINST MARTINO

118. The preceding paragraphs of Kreyol Music and Melodie Makers JW's claims are realleged and incorporated herein by reference as if fully set forth herein.

119. In 2007, Kreyol Music entered a written agreement with Mr. Martino and purchased his second solo album entitled *Oye Chica* and other matters referenced herein as the 2007 Kreyol Music /Martino Agreement.  Kreyol Music purchased all the rights for this album from Mr. Martino for a lump sum cash payment, including the publishing and sound recording rights.

120. Such 2007 Kreyol Music/Martino Agreement was entered between Kreyol Music and Mr. Martino in 2007 regarding (i) the album *Oye Chica*, (ii) an option for another album, as well as (iii) Mr. Martino's obligation "[to] bring to the Label's attention each and every inquiry, proposal or offer it receives relating to Artist's involvement in the music and recording industry."  See 2007 Kreyol Music/Martino Agreement, Paragraphs 1.e, 2.e. and 7.b.

121. Kreyol Music has complied with the 2007 Kreyol/Music Martino Agreement.

122. For the monetary consideration provided by Kreyol Music, Mr. Martino granted Kreyol Music a right of first refusal with respect to any of his involvement in the music and recording industry.  Under the 2007 Agreement, Mr. Martino was obligated to bring "each and every inquiry, proposal or offer it receives relating to the Artist's involvement in the music and

recording industry." Under Section 7.b. of such Agreement, Mr. Martino also agreed that he would not enter agreements with any other persons to represent him with respect to the subject matters covered by such agreement.

123. Under such 2007 agreement, Mr. Martino was required to bring to Kreyol Music all music and recording matters relating to "ECX."

124. Following the entry of the 2007 Agreement, Kreyol Music regularly provided opportunities to Mr. Martino in the music industry including offering Mr. Martino opportunities to play in performances and record guitar tracks on albums with other musical artists managed by Kreyol Music. Mr. Martino was paid for all such work.

125. Following entry of the 2007 Agreement, in or around 2012, Mr. Martino asked Kreyol Music to distribute online several of his older, pre-2007 albums. Kreyol Music agreed on a royalty rate for such online distribution. Kreyol Music distributed such albums online. Mr. Martino was issued royalty statements and paid royalties biannually from approximately 2012 until 2024, including after the commencement of this lawsuit.

126. Mr. Martino has claimed, in a declaration submitted in this action, that he assigned to Free World Music "all right, title, and interest in and to the Master Recording of "ECX." Besides the fact that he could not do so because the master sound recording of *"ECX"* is owned by Kreyol Music and Melodie Makers and Mr. Martino had no rights in the sound recording, Mr. Martino was obligated under the 2007 Agreement to bring any matters regarding his involvement in the music industry to Kreyol Music, and his alleged assignment to Free World Music breached the 2007 Kreyol Music/Martino Agreement.

127. Upon information and belief, in 2022, Robert Martino in concert with the Plaintiffs issued a remastering of the sound recording of the album *Viva les Difficiles* containing "ECX"

under the same album title *Viva les Difficiles* herein referenced as the Remastered and Martino Infringing Album.  The album cover for such Remastered and Infringing Martino Album also substantially copied the title of album and extremely distinctive font of the album's name as well as photographs featured on *Viva les Difficiles* to make it look confusingly similar to the original *Viva les Difficiles* album owned by Kreyol Music and Melodie Makers.  Upon information and belief, the sound recording of "ECX" on such Remastered and Infringing Album is an unauthorized copy of "ECX" from *Viva les Difficiles* for which the publishing and sound recording rights are owned by Kreyol Music and Melodie Makers.  Upon information and belief, Martino and Plaintiffs collaborated together to produce and sell the Remastered and Infringing Martino Album.  Martino and Plaintiffs' conduct with respect to the release and sale of such unauthorized remastered album constitutes copyright infringement of Kreyol Music and Melodie Makers's publishing and sound recording rights in *Viva les Difficiles* and "ECX."  Martino's conduct with respect to the production and release of the Remastered and Infringing Martino Album also breached the 2007 Kreyol Music/Martino Agreement.

128. Martino and/or Plaintiffs reproduction, release, sale and exploitation of the Remastered and Infringing Martino Album constitutes a material breach of Kreyol Music's rights of first refusal clause under the 2007 Kreyol Music/Martino Agreement and Kreyol Music has been substantially damaged thereby.

129. Martino's release, sale and exploitation of the album *The Legend Is Back* constitutes a material breach of Kreyol Music's rights of first refusal clause under the 2007 Kreyol Music/Martino Agreement, and Kreyol Music has been substantially damaged thereby.  In addition, in such agreement, Kreyol Music expressly purchased and paid for the publishing and sound recording rights for several songs composed by Mr. Martino, including *Oye Chica* and "Ti

DWET."   In material breach of such Agreement, Mr. Martino, when he released and continues to sell *The Legend is Back,* he included on such album the songs "Oye Chica" *and* "Ti DWET" the publishing and sound recording rights which belong to Kreyol Music.  Kreyol Music has been damaged because it has not received the royalties Mr. Martino agreed that Kreyol Music was entitled to for its publishing portion.

130. Mr. Martino expressly offered *The Legend is Back* album, including works "Oye Chica" and "Ti DWET," for sale on his Instagram page and a payment method was listed.  The album and individual works from the album including "Oye Chica" and "Ti DWET" also are currently being offered for sale on the Apple Music and Spotify platforms.

131. In a publishing agreement dated July 1, 2021 between Mr. Martino and Plaintiff Keep on Kicking, Mr. Martino purported to assign the copyright in his entire catalog of musical compositions to Keep on Kicking, including all of the songs on *Viva les Difficiles*, several of the songs on *Oye Chica*, and "Let Me Touch Your Button."  Among other things, Mr. Martino had already granted Kreyol Music the sole and exclusive publishing rights to *Oye Chica* in the songs, melodies and music on such album.  Mr. Martino's entry into such Publishing Agreement with Keep on Kicking constitutes a breach of the 2007 Kreyol Music/Martino Agreement with respect to the songs on the *Oye Chica* album.

132. During discovery in this case, Kreyol Music learned for the first time that during 2007 and/or 2008 that Mr. Martino may have collaborated with Wyclef Jean on a musical work titled "Let Me Touch Your Button," which sampled the master sound recording of "ECX" on *Viva les Difficiles* in contravention of Kreyol Music's rights in the master sound recording.  In addition, Mr. Martino did not bring such music industry opportunity to Kreyol Music's attention

as required under the 2007 Kreyol Music/Martino Agreement and such omission constitutes a breach of the 2007 Kreyol Music/Martino Agreement.

133. Kreyol Music demands monetary damages, attorneys' fees and costs, and all other available equitable and monetary remedies of any type or kind, against Mr. Martino for his serial, material breaches of the 2007 Kreyol Music/Martino Agreement.

## JURY DEMAND

Kreyol Music and Melodie Makers hereby demand a trial by jury of all issues triable by jury.

## NOTICE OF ISSUE OF FOREIGN LAW

Pursuant to Fed R Civ. P. 44.1, Kreyol Music and Melodie makers herby give notice that they may raise an issue about a foreign country's law, including but not limited to ownership of the musical composition and sound recording "ECX" under Haitian law.

New York, New York
Dated: July 10, 2025

Respectfully submitted,

BRENNAN LAW FIRM PLLC

By: _Kerry A. Brennan_
Kerry A. Brennan

116 West 23rd St., 5th Floor
New York, NY  10011
kerry.brennan@brennanlawpllc.com
Tel.: 212-729-1980

Counsel for Kreyol Music, Inc. and Melodie Makers, Inc.